Breault *v.* Chairman of the Board of Fire Commissioners of Springfield.

RICHARD J. BREAULT *vs.* CHAIRMAN OF THE BOARD OF
FIRE COMMISSIONERS OF SPRINGFIELD.[1]

Hampden. March 4, 1987. — October 13, 1987.

Present: HENNESSEY, C.J., WILKINS, LIACOS, ABRAMS, NOLAN, LYNCH, & O'CONNOR, JJ.

*Practice, Civil,* Interlocutory appeal. *Civil Rights,* Immunity of public official. *Municipal Corporations,* Officers and agents. *Public Officers. Statute,* Construction.

A judge's pretrial ruling that, even though certain acts complained of by the plaintiff were performed by the defendant solely in his capacity as a public official, the defendant was not immune from liability under the State or Federal civil rights laws, G. L. c. 12, §§ 11H and 11I, and 42 U.S.C. § 1983 (1982), was a final judgment for purposes of appeal. [30-31]

The chairman of a city's board of fire commissioners was called upon to act only in a ministerial, not a discretionary, capacity when responding to a fire fighter's request for reinstatement under G. L. c. 31, § 37, following a voluntary leave of absence, and consequently, the chairman was not immune from suit under 42 U.S.C. § 1983 (1982), for allegedly violating the fire fighter's civil rights by conditioning his reinstatement on his agreeing not to bring any claims against the city or its fire department. [31-34] LYNCH, J., joined by NOLAN, J., dissenting.

The chairman of a city's board of fire commissioners, in reinstating a fire fighter pursuant to G. L. c. 31, § 37, following a voluntary leave of absence, was performing an intentional ministerial act in his capacity as a public official, and thus was not immune from a suit by the fire fighter alleging that, by conditioning the reinstatement upon the fire fighter's agreeing to bring no claims against the city or its fire department, the chairman had violated the Massachusetts Civil Rights Act, G. L. c. 12, §§ 11H and 11I. [34-38] WILKINS, J., concurring. LYNCH, J., joined by NOLAN, J., dissenting.

---

[1] The chairman, Frank Forastiere, was also sued individually. The city of Springfield was also a defendant but its motion for summary judgment was granted.

An amicus brief was submitted by the Civil Liberties Union of Massachusetts and the Lawyers' Committee for Civil Rights Under Law of the Boston Bar Association.

CIVIL ACTION commenced in the Superior Court Department on December 30, 1982.

A pretrial motion for a determination of the defendant's qualified immunity from suit and a motion for summary judgment were heard by *John F. Moriarty,* J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Harry P. Carroll,* Deputy City Solicitor (*Richard T. Egan,* City Solicitor, with him) for the defendant.

*Arthur D. Serota* for the plaintiff.

*Marjorie Heins & Robert Sherman,* for Civil Liberties Union of Massachusetts & another, amici curiae, submitted a brief.

LIACOS, J. A judge of the Superior Court concluded, in a pretrial order, that, even though the acts complained of by the plaintiff were performed by the defendant solely in his capacity as a public official, he is not immune from liability under the Federal or State civil rights laws, 42 U.S.C. § 1983 (1982) and G.L. c. 12, §§ 11H and 11I (1986 ed.).[2] The judge also

---

[2] In relevant part, the statutes centrally pertinent to this appeal read as follows: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress." 42 U.S.C. § 1983 (1982).

"Whenever any person or persons, whether or not acting under color of law, interfere by threats, intimidation or coercion, or attempt to interfere by threats, intimidation or coercion, with the exercise or enjoyment by any other person or persons of rights secured by the constitution or laws of the United States, or of rights secured by the constitution or laws of the commonwealth, the attorney general may bring a civil action for injunctive or other appropriate equitable relief in order to protect the peaceable exercise or enjoyment of the right or rights secured." G. L. c. 12, § 11H (1986 ed.).

"Any person whose exercise or enjoyment of rights secured by the constitution or laws of the United States, or of rights secured by the constitution or laws of the commonwealth, has been interfered with, as described in section 11H, may institute and prosecute in his own name and on his own behalf a civil action for injunctive and other appropriate equitable relief as provided for in said section, including the award of compensatory money damages. Any aggrieved person or persons who prevail in an action authorized by this section shall be entitled to an award of the costs of the

denied the defendant's motion for summary judgment. The defendant appeals. We conclude that the judge did not err either as to the Federal or State civil rights claim in denying immunity to the defendant. Accordingly, we affirm.

The facts are these. By trade, the defendant is a funeral director. In 1978, the mayor of the city of Springfield (city) appointed him to serve, without compensation, as a member of the board of fire commissioners of Springfield (board), a body charged inter alia with hiring and firing fire fighters in conformance with the civil service laws. See G. L. c. 31, §§ 1 (definition of "[a]ppointing authority"), 48 and 51 (1986 ed.). From July, 1978, through November, 1984, the defendant served as chairman. The plaintiff was employed as a fire fighter by the city. At times relevant to this case, he held a tenured position which was subject to the provisions of G. L. c. 31. In August, 1977, he was indicted on several criminal charges, including statutory rape. The plaintiff was advised by the chief of the fire department that he was at risk of permanent termination from employment if found guilty of conduct unbecoming a fire fighter, but that he could request an unpaid leave of absence pending resolution of the charges against him. The plaintiff then made written request for a leave of absence "for thirty days or until my personal problem has been resolved." His request was granted.

In April, 1981, the plaintiff was tried and acquitted of the criminal charges against him. In June, he applied to the board for reinstatement as a fire fighter. Told to appear at a monthly meeting of the board on August 4, 1981, he did so. The minutes of that meeting disclose that "[t]he Chairman asked [the plaintiff] if he had any claims against the Fire Department or the City," and whether "he had considered writing to the Commission that does not [*sic*] hold the City harmless." The chairman expressed his "feel[ing] that any claim against the City or

litigation and reasonable attorneys' fees in an amount to be fixed by the court." G. L. c. 12, § 11I (1986 ed.).

Qualified immunity may be available to public officials under § 1983. See *Davis* v. *Scherer*, 468 U.S. 183, 194 n.12 (1984); *Harlow* v. *Fitzgerald*, 457 U.S. 800, 818 (1982).

the Fire Department should be resolved before [the plaintiff] is considered for reinstatement." Although another commissioner suggested that the commission "does not want to make it sound like reinstatement . . . is contingent upon whether or not any action is taken by him against the City . . . Breault was asked if he would sign a statement that he would not bring any claims against the City or the Fire Department." When the plaintiff said "he was not sure, he would have to check with his lawyer . . . [t]he Chairman said it was difficult to make a decision and they would wait to see what the Law Department comes up with." Because "[t]he Commission want[ed] an answer to their question about any claims against the City or the Fire Department," the matter was postponed until the next meeting. After more than two months had elapsed, plaintiff's counsel wrote to the board on October 21, 1981, indicating that the plaintiff was represented by counsel and inquiring about the status of Breault's request for reinstatement. On November 10, 1981, the board met and decided to reinstate the plaintiff, his reinstatement to take effect on November 23, 1981.

The plaintiff filed suit against the city and the chairman in December, 1982. In its first three counts, the complaint sought compensation for wrongs alleged to have resulted from his unpaid leave of absence.[3] Count IV alleged denial of the plaintiff's rights and privileges under the First, Fifth, and Fourteenth Amendments to the Constitution of the United States and demanded compensation pursuant to 42 U.S.C. § 1983 (1982). Concerning rights similarly grounded, count V alleged deprivation of those rights "by force, threats, coercion, and intimidation" and demanded compensation pursuant to G. L. c. 12, §§ 11H and 11I. In response to a series of motions in 1985, the judge allowed summary judgment for the defendant city

---

[3] Count I alleged breach of the plaintiff's employment contract and demanded compensation for lost wages and benefits; count II alleged tortious interference with contractual relations and demanded similar compensation, plus an award for emotional distress; count III alleged tortious interference with the plaintiff's right to employment, as guaranteed by G. L. c. 31 (1986 ed.), the civil service statute.

on all counts of the complaint and for the defendant on count I. The defendant was denied summary judgment on the remaining counts.[4] On March 11, 1986, the judge denied the defendant's motions for reconsideration of summary judgment; and, in answer to the defendant's motion for a pretrial determination of qualified immunity from suit on counts IV and V, the judge ruled that the defendant is not immune from liability. The defendant filed a notice of appeal from the order denying immunity from liability on counts IV and V.[5]

1. *Qualified immunity pursuant to § 1983.* The defendant argues that qualified immunity was denied erroneously, and that this interlocutory appeal is properly before us. The plaintiff maintains the contrary.

a. *Appropriateness of review.* The judge's order did not conclude the plaintiff's action at the trial level, and in that sense it was not the sort of final judgment that is entitled to appellate review. See *Kargman* v. *Superior Court,* 371 Mass. 324, 329-330 (1976), and cases cited. Nonetheless, even where part of an action remains undetermined, we treat an order as final if it is to be executed presently with the result that any later appeal would be futile. *Borman* v. *Borman,* 378 Mass. 775, 779-780 (1979), relying on *Vincent* v. *Plecker,* 319 Mass. 560, 564 n.2 (1946).

[4] We are not asked to decide, nor do we take a position on, the question of the validity or the legal sufficiency of the plaintiff's claims under either the Federal or State Civil Rights Acts. We decide only the limited question whether the defendant is entitled to immunity from suit or liability due to the official capacity in which he performed the acts which give rise to this complaint.

[5] The order appealed from denied immunity not only with respect to the plaintiff's civil rights claims but also with regard to the intentional torts alleged in the surviving counts II and III. This part of the order does not appear to have been appealed.

In addition to the appeal, the defendant petitioned a single justice of the Appeals Court for relief pursuant to G. L. c. 231, § 118 (1986 ed.). On April 18, 1986, the petition was denied, and the defendant's appeal from that denial by a single justice was dismissed on May 28, 1986, leaving only his appeal from the trial judge's denial of summary judgment and the order denying him immunity. A single justice of the Appeals Court concluded that this appeal should be heard by a panel of the Appeals Court. We transferred the case to this court on our own motion.

The defendant would not benefit from our rule of "present execution," as stated in *Borman,* if the asserted right to immunity is but a right to freedom from *liability* under § 1983, for in that case his right could be vindicated fully on appeal after trial. If, however, the asserted right is one of freedom from *suit,* the defendant's right will be lost forever unless that right is determined now, and his appeal is proper.

The controlling Federal authority clearly indicated that the immunity in question is an immunity from "the risks of trial." *Harlow* v. *Fitzgerald,* 457 U.S. 800, 816 (1982). The immunity created by the Supreme Court for application to suits brought under this Federal statute is an immunity from suit, not just from liability. *Mitchell* v. *Forsyth,* 472 U.S. 511, 525-526 (1985) (plurality opinion, *id.* at 518, 530, stating that, by force of "collateral order doctrine," decision by Federal District Court denying qualified immunity to suit under § 1983 is appealable "final decision" within meaning of 28 U.S.C. § 1291 (1982), notwithstanding absence of final judgment).[6] Therefore, in the sense contemplated by our rule of present execution, *Borman, supra,* the judge's order denying qualified immunity is final, and the question of the validity of the judge's order is ripe for consideration by this court.

b. *The denial of immunity.* "Government officials performing discretionary functions may be shielded from liability for civil

---

[6] The plaintiff argues that *Mitchell, supra,* is binding authority only where action under § 1983 is brought in the Federal courts, which alone are subject to the Supreme Court's interpretation of 28 U.S.C. § 1291 (1982); and that, pursuant to longstanding rules governing choice of law, matters pertaining to form and conduct of an action, including remedies, are procedural questions properly governed by the law of the forum (Massachusetts), which he views as barring the defendant's interlocutory appeal. While the first of the plaintiff's propositions may be strictly correct, we note that the *Mitchell* Court, *supra* at 518, arrived at its result by applying the "collateral order doctrine" of *Cohen* v. *Beneficial Indus. Loan Corp.,* 337 U.S. 541, 546 (1949), and we have described the *Cohen* rule as "a doctrine closely analogous to our rule of present execution." *Borman, supra* at 780. Thus, even if we were concerned merely with comity and consistency, we would hold as we do. More importantly, were we to withhold the right of appeal in courts of this Commonwealth, the practical effect would be to ensure that a large number of suits under § 1983 would be removed to Federal courts. We decline to adopt such a rule.

damages in a § 1983 action by the doctrine of qualified immunity. *Harlow* v. *Fitzgerald,* 457 U.S. 800, 818 . . . (1982); *Davis* v. *Scherer,* 468 U.S. 183 [, 194 n.12] (1984) (immunity standard of *Harlow* applies in § 1983 actions). An official is entitled to immunity if, at the time of the challenged action, the statutory or constitutional right allegedly violated was not 'clearly established.' *Harlow,* 457 U.S. at 818 . . . ." *Bonitz* v. *Fair,* 804 F.2d 164, 166 (1st Cir. 1986). Discussing the role of appellate courts pursuant to *Mitchell, supra,* the United States Court of Appeals for the First Circuit, in *Bonitz* v. *Fair, supra,* has emphasized that the scope of review is limited to questions of law, *id.,* quoting *Mitchell, supra* at 530, that is, whether (a) the acts complained of were "discretionary functions," not ministerial in nature, and (b) the statutory or constitutional rights allegedly violated were "clearly established." See *Anderson* v. *Creighton,* 483 U.S. 635, 641 (1987) (principle of qualified immunity allows defendant to seek summary judgment on ground that, on "clearly established principles [of law]," he could have reasonably believed his acts to be lawful).

In this case, the judge withheld immunity under the *Harlow* standard because he concluded both that (a) when responding to the plaintiff's request for reinstatement, the defendant was performing a nondiscretionary, ministerial act, clearly mandated in the instant circumstance by G. L. c. 31, § 37 (governing reinstatement after voluntary leave of absence from a civil service position); and (b) even though "[t]he average layman may not be able to point immediately to the First Amendment to the United States Constitution or Article XI of the Declaration of Rights as the source" of the right allegedly violated, "the right of free access to the courts is . . . so clearly established that a reasonable person in [the defendant's] position would have known about it." The defendant argues, however, that rights are not "clearly established" for *Harlow* purposes unless, at the time of the acts at issue, the rights were enshrined in factually indistinguishable case law, either controlling in the jurisdiction or substantially uncontroverted, about which a layman like himself reasonably should have known.

We need not reach these latter arguments because immunity is available, as a threshold matter under *Harlow,* only where the defendant official was "performing discretionary functions," *Harlow, supra* at 818. We agree with the judge that the facts alleged by the plaintiff described circumstances in which the defendant was called upon to act only in a ministerial, not a discretionary, capacity.[7] It is undisputed that the leave of absence granted to the plaintiff in 1977 was governed by G. L. c. 31, § 37 (1986 ed.). According to § 37, "[a]ny person who has been granted a leave of absence . . . pursuant to this section *shall* be reinstated at the end of the period for which the leave was granted . . ." (emphasis supplied). Having in mind both "the ordinary and approved usage" of this language, as well as the "object to be accomplished," *Commonwealth* v. *Galvin,* 388 Mass. 326, 328 (1983), namely the protection of civil servants' rights to their public employment, see generally *Horrigan* v. *Mayor of Pittsfield,* 298 Mass. 492, 495 (1937),

---

[7] The dissent proceeds on the premise that the defendant's acts were discretionary, not ministerial. Thus, the dissent relies on *Harlow* for its conclusion that the defendant, at least under Federal law, was entitled to immunity. A number of points need be made. First, *Harlow* itself recognizes that the doctrine of qualified immunity is limited to discretionary acts. "Immunity generally is available only to officials performing discretionary functions." *Harlow, supra* at 816. Second, the motion judge ruled that the defendant "was not . . . performing a discretionary function in acting on the plaintiff's request for reinstatement." Third, the plaintiff's complaint and answers to interrogatories assert throughout a violation of G. L. c. 31 and of the collective bargaining agreement between the city and the plaintiff's union. Fourth, G. L. c. 31, § 37, on its face (see text above), is clear that reinstatement was mandatory. Fifth, it is clear that the leave expired when the plaintiff's "personal problem" was resolved, or that the "personal problem" had been resolved (by the jury's verdict of acquittal) by the time the plaintiff sought reinstatement. Last, and perhaps most important, the dissent's position confuses the merits of the claim with the interlocutory matter before us — whether there is immunity from suit — with the substantive question of liability, a point we decline to reach (see note 4, *supra*). If the dissent were to prevail, summary judgment would enter for the defendant, and the plaintiff would be barred from having his claim decided on the merits.

As to the dissent's views on the State Civil Rights Act, that opinion also is based on the same faulty premises. The dissent's reliance on *Gildea* v. *Ellershaw,* 363 Mass. 800 (1973), is misplaced, since the acts here involved were not discretionary, but ministerial.

we read the statute to require reinstatement when the term of the leave expires. Admittedly, the terminus of the leave granted to the plaintiff was not fixed by date; nonetheless, because the leave was sought by the plaintiff to cover that period of time "until my personal problem [i.e., his indictment] has been resolved," reinstatement was the plaintiff's mandatory right after his acquittal.[8] Because the defendant enjoyed no statutory discretionary authority to withhold reinstatement, he acted in a ministerial capacity. Immunity was properly denied.

2. *Immunity under State law.* In response to the defendant's claim of immunity from liability or suit under the Massachusetts Civil Rights Act (Act), G. L. c. 12, §§ 11H and 11I, the judge reasoned from our decision in *Chicopee Lions Club* v. *District Attorney for the Hampden Dist.,* 396 Mass. 244 (1985), that "some form of immunity is applicable to claims against [nonjuridical] officers . . . in appropriate cases." He then applied to the plaintiff's statutory action our common law standard for extending immunity to nonjuridical officers sued in tort. According to this test, immunity is warranted where an official has acted within the scope of a discretionary public duty and not in bad faith, with malice, or corruptly. See *Gildea* v. *Ellershaw,* 363 Mass. 800, 820 (1973). For purposes of argument, the judge ruled that, even if the defendant had performed in a discretionary capacity, immunity was unwarranted because, if the plaintiff's allegations were true, the defendant could be viewed as having tried to coerce him into surrendering the right to pursue his legal claims, and therefore the defendant could be found to have acted in bad faith or with malice. We concur in the result reached by the judge, but on different grounds.[9]

---

[8] *Davis* v. *Scherer,* 468 U.S. 183 (1984), is not to the contrary. It states that a law creates discretionary authority for purposes of *Harlow* whenever it "fails to specify the precise action that the official must take in each instance." *Id.* at 196 n.14. We read § 37 as mandating reinstatement in *every* instance where, as here, the terminus of the leave is clearly determinable from the terms of its grant.

[9] Again, the plaintiff argues that the judge's order denying immunity is interlocutory and not appealable. However, if immunity is even arguably

In *Chicopee Lions Club, supra* at 252, we noted that "the Massachusetts Civil Rights Act by its terms admits of no immunities." Even though the Act itself is silent on the question of immunity, it is reasonable to conclude that the Legislature did not intend to immunize nonjuridical officers for all ministerial acts performed by them.[10] In the year immediately prior to adoption of the Civil Rights Act, St. 1979, c. 801, the Legislature responded to the proddings of this court by adopting a Tort Claims Act, G. L. c. 258. See St. 1978, c. 512, § 15. The Tort Claims Act abrogated the common law rule of sovereign immunity which had theretofore immunized public entities from suit in tort claims arising from the acts or omissions of public employees. See G. L. c. 258, § 2. See also *Morash & Sons* v. *Commonwealth,* 363 Mass. 612 (1973). The Tort Claims Act also absolved public employees from liability for their negligent acts performed within the scope of official duties. G. L. c. 258, § 2. Significantly, however, the Tort Claims Act withheld immunity from public employees (and retained immunity for public entities) where the acts complained of were "intentional," as opposed to negligent, G. L. c. 258, § 10 (*c*); and the Tort Claims Act authorized public employers to "indemnify public employees . . . in an amount not to exceed one million dollars" where harm is alleged "by reason of an intentional tort, or by reason of any act or omission which constitutes a violation of the civil rights of any person under any federal or state law." G. L. c. 258, § 9 (1986 ed.).[11]

---

in the public interest, it must operate as an immunity from suit, not just from liability. See *Mitchell* v. *Forsyth,* 472 U.S. 511, 525-526 (1985). Consequently, the judge's order was appealable because it was "final" within the meaning of our rule of "present execution." See *Borman* v. *Borman,* 378 Mass. 775, 779-780 (1979).

[10] *Tyree* v. *Keane,* 400 Mass. 1, 5-6 (1987), is not to the contrary. In that case, we assumed qualified immunity to be a defense to a § 1983 action in determining the relevance of certain excluded evidence. In *Tyree* we did not discuss the question of qualified immunity under the State act because the parties did not raise the question.

[11] Indemnification is also provided for certain public officers. G. L. c. 258, § 9A (1986 ed.). In contrast, intentional violations of civil rights are not subject to indemnification. G. L. c. 258, § 13.

Thus, when the Legislature adopted the Civil Rights Act one year later in 1979, it wrote on a common law slate recently wiped clean and newly limned with statutory markings. Clearly, these markings indicated a legislative willingness to see public officers sued for violations of civil rights, else no treatment of the question of indemnification from civil rights suits would have been necessary. Furthermore, while we do not intimate that compensatory civil rights claims are indistinguishable from actions alleging intentionally tortious acts, the Legislature's provision for indemnity from both in the same statutory sections, §§ 9 and 9A, and the exclusion of indemnity in § 13, suggests an awareness by the Legislature of the possibility of suits such as this. Additionally, the statutory exemption only for discretionary acts, G. L. c. 258, § 10 (b), buttresses our view that the Legislature did not intend to preclude suits based on intentional ministerial acts.

Because the Civil Rights Act proscribes only those interferences with civil rights which are accomplished "by threats, intimidation or coercion," G. L. c. 12, § 11H, incorporated by reference in G. L. c. 12, § 11I, the Act operates almost entirely within the realm of "intentional" behavior.[12] Given that adoption of the Act followed closely on the heels of enactment of the Tort Claims Act, we think it both logical and likely that the Legislature viewed the later legislation in light of the earlier enactment, and intended to withhold immunity from officials who intentionally violated the Act, just as the Tort Claims Act withholds immunity from intentional tortfeasors.

---

[12] By this we mean that the Act operates almost entirely within the realm of behavior which is "intentional" in the tort sense "that the actor desires to cause consequences of his act, or that he believes that the consequences are substantially certain to result from it." Restatement (Second) of Torts § 8A (1965). Accord *Redgrave* v. *Boston Symphony Orchestra, Inc.*, 399 Mass. 93, 99 (1987) (although "specific intent" is not essential to violation of Act, that degree of intent which makes persons responsible for natural consequences of their action must be shown). Also, G. L. c. 258, §§ 9, 9A, 10 (c), and 13, recognize the potential distinction between intentional torts and intentional violations of civil rights.

We need not decide the question whether a negligent violation of civil rights may give rise to a valid claim of a violation of the Act.

401 Mass. 26 37

Breault *v.* Chairman of the Board of Fire Commissioners of Springfield.

Turning now to the question whether, at the time the Act was passed, there existed any "tradition" of immunity for non-juridical officers so firmly "rooted in history" that we should not presume the Legislature to have abandoned it without comment, *Chicopee Lions Club, supra,* our review of the court's common law decisions reveals nothing of the sort. Compare *Anderson* v. *Bishop,* 304 Mass. 396, 398-399 (1939) (directly citing a line of decisions back to 1854 in support of the doctrine of absolute judicial immunity, and back to 1926 in support of absolute prosecutorial immunity), with *Gildea* v. *Ellershaw,* 363 Mass. 800, 820 (1973). In *Gildea,* the court sought to reconcile what can best be described as a confusing welter of previous decisions. Some of these decisions withheld immunity entirely, stating, for example, that, even where nonjuridical officers had performed their duties in good faith, "[t]he cloak of office is no protection to them," *Stiles* v. *Municipal Council of Lowell,* 233 Mass. 174, 182 (1919), discussed in *Gildea, supra* at 805-810, 821-825; *Miller* v. *Horton,* 152 Mass. 540 (1891) (Holmes, J.); other decisions, however, upheld immunity even when the official acts complained of were ministerial in nature, so long as nonfeasance was alleged rather than misfeasance, see, e.g., *Desmarais* v. *Wachusett Regional School Dist.,* 360 Mass. 591, 593 (1971), mentioned in *Gildea, supra* at 812 n.11; and see *Fulgoni* v. *Johnston,* 302 Mass. 421, 423 (1939);[13] and still others "attempt[ed] to give nonjudicial public officers the benefit of . . . [absolute] immunity . . . enjoyed by judges, but only if . . . the function of the officer which gave rise to the claim for damages was either judicial or quasi judicial in nature." *Gildea, supra* at 812, referring to *Barry* v. *Smith,* 191 Mass. 78, 88 (1906), and *Jaffarian* v. *Murphy,* 280 Mass. 402, 406-407 (1932). It was decided in *Gildea* that henceforward the nonjuridical officer was entitled to tort immunity for discretionary acts performed within the scope of official duty, in good faith and without malice or corruption. *Id.* at 820. It is significant to note that both *Gildea* and *Chicopee*

---

[13] For a recent discussion of the vitality of this approach where negligence is alleged at common law, see *Narine* v. *Powers,* 400 Mass. 343 (1987).

*Lions Club* dealt with discretionary acts of public officials. The same is true of *Pina* v. *Commonwealth,* 400 Mass. 408, 412 (1987). See G. L. c. 258, § 10 (*b*). None of these cases, or § 10 (*b*), has application to acts, such as those in the case at bar, which are ministerial in nature. In these circumstances, we think that the silence of the Legislature concerning immunity under the Act cannot be interpreted as incorporating a tradition of immunity for intentional ministerial acts. In this context where history is no guide, we rely heavily on the principle that the Act, "like other civil rights statutes, is remedial [and] is entitled to liberal construction of its terms." *Batchelder* v. *Allied Stores Corp.,* 393 Mass. 819, 822 (1985). We conclude, therefore, that, where intentional ministerial acts of public officials are involved, there is no basis to conclude, under the relevant statutes and case law, that immunity from suit should be granted. Accordingly, the judge was correct in ruling that the defendant was not immune from the remedial ambit of the Act.

The considerations cited in *Harlow* v. *Fitzgerald,* 457 U.S. 800 (1982), do not outweigh the public interest in affording remedies to persons injured as described in the Act. We need not discuss the defendant's argument in favor of adopting the particular form of immunity propounded in *Harlow* because that case deals with discretionary, not ministerial, acts. While we appreciate the meticulousness with which the judge applied the *Gildea* test for immunity in this case, we decline to adopt that approach. The *Gildea* standard is basically a test which serves to protect officials who perform discretionary duties.

Since no immunity was warranted, the order denying the defendant immunity under counts IV and V was correct, and summary judgment for the defendant was properly denied.

*Orders affirmed.*

WILKINS, J. (concurring). The court is correct in concluding that the defendant was performing a ministerial act. The court's opinion, however, unduly complicates this case.

The basic issue is whether the defendant is entitled to immunity under G. L. c. 258, § 2. He is so entitled if § 2 applies to his conduct. Section 2 does not apply to "any claim arising out of an intentional tort." G. L. c. 258, § 10 (*c*) (1986 ed.). Some violations of the Civil Rights Act (G. L. c. 12, §§ 11H and 11I) should be treated as intentional torts for the purposes of § 10 (*c*) and others should not be. The intentional conduct which justifies a claim under the Civil Rights Act is not the same as the intentional conduct that is an element of an intentional tort. See *Redgrave* v. *Boston Symphony Orchestra, Inc.*, 399 Mass. 93, 99 (1987).

The question whether this claim falls within the scope of G. L. c. 258 remains open in this case. If the claim is based on an intentional tort, such as an intentional violation of civil rights, I agree that the defendant is not immune from liability. If the claim is based on ministerial conduct which was not undertaken with the intention of depriving the plaintiff of his civil rights, the wrong would not be intentional and § 2 immunity would be available.

LYNCH, J. (dissenting, with whom Nolan, J., joins). I dissent because I conclude that the defendant was immune from suit for the acts complained of under both Federal and State law.

1. *Liability under § 1983.* The court concludes that the defendant was properly denied qualified immunity under 42 U.S.C. § 1983 (1982) because the plaintiff's reinstatement was required by G. L. c. 31, § 37, and, therefore, the defendant's conduct was ministerial and not discretionary. Although reinstatement to a classified position after a leave of absence may be ministerial in some circumstances, the record here establishes that reinstatement was discretionary. General Laws c. 31, § 37, provides, in part, that an appointing authority may grant a leave of absence for more than fourteen days only upon the written request of the employee (or other person authorized) which shall include a detailed statement of the reason for the request. Furthermore, no leave of absence for a period of more than three months shall be granted without the prior approval

of the administrator. The section further provides that any person who has been granted a leave of absence or an extension thereof, "pursuant to this section," shall be reinstated "at the end of the period for which the leave was granted."

The leave in this case was granted in 1977, and the plaintiff's request for reinstatement at issue was filed in June, 1981. The motion judge found that there was nothing in the record to indicate that the leave was granted with the prior approval of the administrator as required by § 37. The court informs us that the plaintiff's leave was requested "for thirty days or until [his] personal problem has been resolved." The plaintiff appeared before the board on August 4, 1981, and he was reinstated three and one-half months later on November 23, 1981. Neither in his complaint nor by affidavit did the plaintiff claim that his request for a leave of absence complied with the requirements of § 37. There was no evidence that the prior approval of the administrator, an essential element of § 37, was obtained, and nowhere does it state that the termination of the leave would be at any definite time, only that the leave was for the vague period, "until my personal problem has been resolved." Neither is it clear that the request for a leave "until my personal problem has been resolved" complies with the requirement that the request contain a detailed statement of the reason for the request. I do not mean to imply that either the plaintiff or the defendant is to be criticized for agreeing to a voluntary leave of absence in the circumstances of this case. The point is that the defendant cannot be charged with responsibility for failure to perform a ministerial act until such time as it is shown that the conditions making reinstatement mandatory have been clearly established. Therefore, because the findings and allegations establish that the factual predicates for the applicability of § 37 were missing, the official could not know the precise action that was required of him, and thus reinstatement was discretionary. I would agree that § 37 mandates reinstatement when those factual predicates are clearly before the official in question; however, such is not the case here.

Neither do I believe that the defendant could be found to have acted with knowledge that his conduct violated any

"clearly established" statutory or constitutional right of the defendant. The defendant could not reasonably be expected to know that the plaintiff's reinstatement on the condition of a waiver of his civil claim was unlawful. *Harlow* v. *Fitzgerald,* 457 U.S. 800, 818 (1982). Until recently, judges and other officials with expert knowledge frequently sought waivers of civil claims as a precondition to favorable action toward a criminal defendant. See *Foley* v. *Lowell Div. of the Dist. Court Dep't,* 398 Mass. 800, 804-805 (1986). Recently, the Supreme Court reversed a decision of the Court of Appeals for the First Circuit, invalidating such a waiver. *Newton* v. *Rumery,* 480 U.S. 386 (1987). Thus the law was by no means settled and, in fact, the Supreme Court in *Newton* v. *Rumery, supra,* ruled that even in a criminal case, such a waiver is not necessarily invalid.

I conclude, therefore, that the plaintiff has failed to allege sufficient facts either in his complaint or by affidavit to establish the defendant's liability under 42 U.S.C. § 1983 (1982). Summary judgment in favor of the defendant should have been granted.

2. *Liability under State law.* The court concludes that no immunity protects public officials from liability for intentional torts while performing ministerial acts. Since I believe that the plaintiff's claim is grounded on discretionary conduct of the defendant, I would not reach the question of liability for ministerial acts and would apply our traditional rule of immunity for public officials. Although the Massachusetts Civil Rights Act is silent on the question of immunity, the court recently concluded that juridical officers are absolutely immune from suit under G. L. c. 12, § 11I, because that statute contained no abrogation of the common law immunity of such officers. *Chicopee Lions Club* v. *District Attorney for the Hampden Dist.,* 396 Mass. 244, 252 (1985). I would adhere to the logic of the *Chicopee Lions Club* decision and would apply the rule of immunity in effect prior to the enactment of G. L. c. 12, § 11I.[1] In addition, I cannot agree that the adoption of the

---

[1] Similar immunity is afforded to such officials under 42 U.S.C. § 1983 (1982), the Federal counterpart of G. L. c. 12, § 11I. See *Bell* v. *Mazza,*

Massachusetts Tort Claims Act in a previous legislative session is any evidence of a legislative intent to create by implication in a subsequent statute a new rule of immunity for previously protected public officials. Furthermore, the fact that the Legislature abolished sovereign immunity in order to permit citizens to seek recourse against governmental agencies evinces no intent to change the law of immunity for public officials who had previously been liable for their negligent, as well as intentional, torts. The Massachusetts Tort Claims Act is not about *granting* immunity to individuals. It created a cause of action against governmental agencies where previously sovereign immunity had barred such suits. It eliminated claims against public employees for negligence within the scope of their employment where liability of governmental agencies was created, G. L. c. 258, § 2, and left undisturbed employee liability where the law of governmental liability was left undisturbed, G. L. c. 258, § 10. Clearly the statute deals primarily with governmental liability and deals only incidentally, in a limited circumstance, with immunity of individuals. In enacting the Massachusetts Civil Rights Act, therefore, the Legislature was adding new principles to a system already affected by common law axioms (as it usually does), not adopting a law to be applied in a vacuum or writing "on a common law slate recently wiped clean." *Ante* at 36.

The common law, as discerned by this court in *Gildea* v. *Ellershaw*, 363 Mass. 800, 820 (1973), is that nonjuridical officers are afforded immunity for their discretionary acts performed within the scope of official duty in good faith without malice or corruption. I would apply to these officers the same immunity that existed for them at the adoption of the Massa-

---

394 Mass. 176, 181 (1985), citing *Batchelder* v. *Allied Stores Corp.*, 393 Mass. 819 (1985). The Supreme Court in *Davis* v. *Scherer*, 468 U.S. 183, 194 & n.12 (1984), applied the qualified immunity described in *Harlow* v. *Fitzgerald*, *supra*, to actions brought under 42 U.S.C. § 1983 (1982).

In *Batchelder* v. *Allied Stores Corp.*, *supra* at 822-823, this court concluded "that the Legislature intended to provide a remedy under G. L. c. 12, § 11I, coextensive with 42 U.S.C. § 1983 . . . except that the Federal statute requires State action whereas its State counterpart does not."

chusetts Civil Rights Act as the court has done for juridical officers. I have previously stated that on the facts of this case the defendant's acts were discretionary. I view the allegations as insufficient to warrant the conclusion that he acted in bad faith with malice or corruption.

I reach this conclusion in full view of the policy considerations extant. In the words of the United States Supreme Court, "government officials are entitled to some form of immunity from suits for damages. As recognized at common law, public officers require this protection to shield them from undue interference with their duties and from potentially disabling threats of liability." *Harlow* v. *Fitzgerald, supra* at 806. "The privilege [of immunity] is not a badge or emolument of exalted office, but an expression of policy designed to aid in the effective functioning of government." *Gildea* v. *Ellershaw,* 363 Mass. 800, 817 (1973), quoting *Barr* v. *Matteo,* 360 U.S. 564, 574 (1959). "[T]he immunity applies equally to decisions which the public officer is required to make and to those he is permitted to make." *Id.* In an era where litigiousness among our citizens has reached a fever peak, and where public officials are subjected to scrutiny of their public and private affairs unparalleled in history, I see no justification to depart from a clearly established rule of immunity.