M. Joe **HERWINS,** Plaintiff, Appellant,

v.

THE CITY OF REVERE, et al.,
**Defendants, Appellees.**

M. Joe Herwins, Plaintiff,
Cross–Appellee,

v.

James J. Marotta, Defendant,
Cross–Appellant.

Nos. 97–2140, 97–2141.

United States Court of Appeals,
First Circuit.

Heard Sept. 11, 1998.
Decided Dec. 17, 1998.

16

Ira H. Zaleznik with whom Lawson & Weitzen, LLP was on brief, for appellant James J. Marotta.

Stephen Schultz with whom McGowan, Engel, Tucker, Garrett & Schultz was on brief, for plaintiff.

Before TORRUELLA, Chief Judge, BOUDIN and STAHL, Circuit Judges.

BOUDIN, Circuit Judge.

M. Joe Herwins, the plaintiff in the district court and cross-appellant here, owned a building at 53A Walnut Avenue in Revere, Massachusetts, in which rooms or apartments were rented to tenants. On February 24, 1993, the defendant-appellant James J. Marotta, a board of health inspector for defendant-appellant the City of Revere, arrived to inspect the building, prompted by a complaint as to the smell of gas or a lack of heat (there is some dispute as to which). It is undisputed that one of the tenants was utilizing a gas stove to provide heat.

Marotta reported to his superior—City Health Agent Michael Pepe—that there was no heat in the building, and later in the day Marotta returned to do a further inspection with other city officials.[1] Following the in-

---

1. Testimony conflicted as to when and for what period the heat was off. Herwins testified later

spection, Marotta reported to his superior, and a letter was drafted to Herwins specifying a large number of alleged violations and concluding that the building was "unfit for human habitation and must be vacated forthwith." *See* Mass. Regs.Code tit. 105, §§ 410.750, 410.831(D) (1941).

Marotta immediately served the letter upon Herwins and the tenants, who then vacated the building. Seven months later, in September 1993, Herwins hired an expert to make a private inspection of the building. The expert concluded that many of the alleged violations did not exist and that the violations, even taken together, did not endanger any of the tenants. The city responded to the expert's report by stating that the main reason for the shutdown was the lack of heat. At a subsequent meeting with city officials in October 1993, the city plumbing inspector told Herwins that in order to reopen Herwins would have to provide a separate bathroom for each unit. The meeting ended in disagreement between the parties.

Herwins subsequently took an appeal to a state board to review the plumbing inspector's determination. The appeal apparently depended on whether the structure was a building existing prior to the enactment of the plumbing code and whether Herwins had nonetheless agreed to comply with the code. The appeal was rejected in May 1994. Herwins did not seek further review of this decision in court and did not seek to reopen the building. Instead, in November 1995, he filed the present two-count complaint in district court against Marotta and the City of Revere asserting violation of his constitutional rights under 42 U.S.C. § 1983.

In each count, Herwins charged that Marotta and the City·of Revere had violated his right to procedural due process under the Fourteenth Amendment. In the first count, Herwins charged that the violation was the closure of his building without prior notice or hearing. The second count charged that the City of Revere had violated procedural due process by failing to advise him, in the letter

directing closure of the building, that he had a right to undertake an administrative appeal from that determination.

Herwins requested a jury trial on the first count of the complaint. On the second count, both sides agreed that the issue should be tried by the district judge because there were no contested issues of fact; the City of Revere conceded that the letter had not included notice of right to appeal even though such notice was required under state regulations. Mass. Regs.Code tit. 105, § 410.832(B)(2). Defendants' request for summary judgment on both counts was denied.

In May 1997, count I was tried to a jury. There was conflicting testimony about the events on the day of the closure, including a dispute as to whether the heat in the building was off when Marotta initially inspected the building and reported to the Health Agent that there was no heat. Pertinently, Herwins testified that Marotta had said to Herwins, at the time that Marotta left the premises in the morning, that he was going to shut down the building if it was the last thing that Marotta did.

This last remark created a link to testimony by Herwins concerning his prior relationship with Marotta and the City of Revere. Over defendants' objection, the jury was told that Marotta had inspected the building in May 1990 and filed civil citations charging Herwins with operating a rooming house without a licence and for structural problems relating to the stairs and porch of 53A Walnut Avenue; that the city had later filed criminal charges against Herwins, prompted in part by Marotta; and that in February 1992, the city had discontinued the criminal proceedings.

Ultimately, the jury returned a verdict on count I against both Marotta and the City of Revere. In answer to specific questions, the jury found that in closing down the building Marotta had falsely or recklessly reported that there was an immediate danger to the tenants. The district court set aside the

---

that it was on in the morning and only turned off in the afternoon by the deputy fire chief for

violations that were then remedied by Herwins.

verdict against the City of Revere but refused to set aside the verdict against Marotta. The jury's determination as to damages—$55,000 in compensatory damages, $5,000 for punitive damages—was allowed to stand as to Marotta.

Thereafter, the district court decided count II under Fed.R.Civ.P. 52. The court ruled as a matter of law that Herwins had no claim under count II against either Marotta or the City of Revere because failing to give him notice of his appeal rights was not a denial of due process but only a violation of state law. On motion by Herwins, the district court also awarded attorney's fees in the amount of just over $95,000 plus costs of almost $9,000.

Following post-trial motions, Marotta filed an appeal to contest the verdict and award of damages and attorney's fees against him. Herwins cross-appealed, challenging the grant of judgment as a matter of law to the City of Revere on count I, the trial judge's decision in favor of both defendants on count II, and the denial of his motion for a new trial on the issue of damages. Herwins also sought review of the award of attorney's fees, claiming that the amount ordered was inadequate.

On this appeal, the dispositive issues are ones of law and are considered *de novo*. See *Liberty Mut. Ins. Co. v. Commercial Union Ins. Co.*, 978 F.2d 750, 757 (1st Cir.1992). We will assume *arguendo* that the jury properly found on count I that Marotta's prompting of the closure letter was without basis and that he knew this to be so or acted recklessly. But we conclude that under controlling precedent this does not give rise to a constitutional claim for denial of procedural due process because state law offered adequate remedies. We address this issue first, turning thereafter to count II and to the award of attorney's fees.

■ The first count of Herwins's complaint alleged that the closure of his building through emergency procedures violated his right to procedural due process under the Fourteenth Amendment. Massachusetts law permits an inspection to trigger an immediate shutdown of a building where an emergency exists threatening health or safety, subject to later opportunity for review at the building owner's behest. Mass. Regs.Code tit. 105, §§ 410.831(D), 410.850. Marotta argues that due process required that he be provided a "pre-deprivation" hearing and, alternatively, that post-deprivation remedies were not adequate.

■ Due process normally requires notice and opportunity for "some kind of hearing," *Memphis Light, Gas and Water Div. v. Craft*, 436 U.S. 1, 19, 98 S.Ct. 1554, 56 L.Ed.2d 30 (1978), prior to a final deprivation of liberty or property. See *id.; Parratt v. Taylor*, 451 U.S. 527, 540, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981). This generalization is a very loose one. There are deprivations so limited that no prior "process" is due, *e.g.,* a *Terry* stop, see *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); and conversely, there are requirements of due process in some instances where the "property" interest is pretty thin by conventional standards. See, *e.g., Goldberg v. Kelly*, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970).

Whether the opportunity needs to be furnished before the seizure or whether a post-seizure opportunity is sufficient depends on the circumstances. Where feasible, the opportunity (for obvious reasons) is expected to be pre-deprivation, see *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985), but this is not always feasible. Two situations in which a post-deprivation opportunity is sufficient were set forth in *Parratt v. Taylor*, 451 U.S. 527, 539, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981) (footnote omitted), as follows:

> [E]ither the necessity of quick action by the State or the impracticality of providing any meaningful predeprivation process, when coupled with the availability of some meaningful means by which to assess the propriety of the State's action at some time after the initial taking ... satisf[ies] the requirements of procedural due process.

No one can seriously doubt that emergency conditions may exist (*e.g.,* a severe fire hazard) that would warrant a peremptory shutdown of a residential building. Herwins does not dispute that "quick action" may be required for such emergencies, nor does he specifically challenge the general ·standards

set forth in Massachusetts law for determining when emergency closures should be ordered. Of course, the jury found that there was no emergency in this case, but that shows only that Marotta's substantive decision was wrong; he was not required to hold a hearing before declaring an emergency.

One might ask why this should matter: after all, as a result of Marotta's substantive decision, Herwins suffered a wrongful shutdown of his building. But the city provided all of the procedural protection it could in requiring a prior hearing for closures based on non-emergency violations. Where an official errs in declaring an emergency, the only feasible procedure is a post-deprivation remedy, which the city also provided. *See Hudson v. Palmer*, 468 U.S. 517, 531–533, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984).

Of course, the law might have developed so as to hold the official liable under the Fourteenth Amendment for his own mistake even if the state had done all it could. Absent Marotta's mistake, Herwins would have had a prior hearing before closure. But the Supreme Court has ruled that in such cases there is no denial of *procedural* due process, even by the official, so long as the state provides an adequate means of redress. The Supreme Court has held this both where the official's action is negligent, *Parratt*, 451 U.S. at 543–44, 101 S.Ct. 1908, and where it is deliberate, *Hudson*, 468 U.S. at 536–37, 104 S.Ct. 3194.[2]

But for this limitation, federal suits might be brought for countless local mistakes by officials in administering the endless array of state laws and local ordinances. Often these errors have a procedural dimension—*e.g.,* a tax lien imposed after a misaddressed notice of taxes due—and inflict temporary harm or inconvenience. Assuming that the state remedies are themselves adequate, it has seemed sufficient to leave such random and individual errors to be corrected by state courts and agencies.

Herwins's claim is not aided by his repeated reliance upon *Zinermon v. Burch*, 494 U.S. 113, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990). There, Florida law permitted an individual to be admitted as a voluntary patient in a mental hospital, and to waive his right to release on request, without any determination that the person was competent to make such a waiver. The Supreme Court held that when Zinermon was wrongly detained, through the use of this flawed procedure, the state might be subject to liability for a denial of procedural due process.

In distinguishing *Parratt*, the Supreme Court said that the Florida procedure of admissions and waiver was not restricted to emergencies. And, since the procedure was itself authorized by state law, Zinermon's admission was not a "random and unauthorized" act of an individual employee or an "unpredictable" departure from state law. *Zinermon*, 494 U.S. at 136, 110 S.Ct. 975. Confinement of patients not competent to consent was easily foreseeable and pre-deprivation screening could feasibly be provided in non-emergency cases. *Id.*

By contrast, Massachusetts does provide for an opportunity to object before a building is shut down *except* in emergencies. While state law led Marotta to invoke summary closure, his "authorized" use of the summary power would not violate the Constitution, and *improper* use is exactly the kind of "random and unauthorized" conduct that the local government had no duty (and indeed no practical way) to forestall through a pre-deprivation hearing—a procedure itself inconsistent with true emergency conditions. *Cf. Hudson*, 468 U.S. at 533, 104 S.Ct. 3194.

■ Herwins's alternative argument is that the city did not provide an adequate post-deprivation remedy. It is undisputed that Herwins could have challenged the shutdown by appealing the order to the City of Revere Board of Health and, if dissatisfied with its decision, could have appealed the ruling to the state courts. Mass. Regs.Code tit. 105, §§ 410.850, 410.860. This is a conventional regime for redressing administrative error, making it unnecessary for us to

---

**2.** This ruling has been followed by the First Circuit in a number of cases, *see, e.g., Romero–Barcelo v. Hernandez–Agosto*, 75 F.3d 23, 33 (1st Cir.1996); *Brown v. Hot, Sexy and Safer Productions, Inc.*, 68 F.3d 525, 534–537 (1st Cir.1995); *Lowe v. Scott*, 959 F.2d 323, 340 (1st Cir.1992), as well as by other circuits, *see, e.g., Nance v. Vieregge*, 147 F.3d 589, 591–592 (7th Cir.1998).

consider whether there exists an alternative judicial remedy of common law *certiorari* (which Marotta asserts exists and Herwins disputes).

 Herwins objects that the appeal to the Board of Health had to be filed within seven days and that the failure to give him notice of this option—as required by state law, Mass. Regs.Code tit. 105, § 410.832(B)(2)—rendered the post-deprivation remedy inadequate. He also says that during the seven days following the emergency closure he was otherwise occupied with dealing with the consequences of the closure (assisting tenants, draining the plumbing system).

The state's failure to provide a landlord with express notice that he can seek review may violate state law but does not render the review remedy constitutionally inadequate. In most civil matters, citizens are expected to ask about the method to protest or appeal an initial administrative action (or to hire a lawyer). An experienced landlord like Herwins would hardly suppose that no opportunity existed to challenge the emergency shutdown order, even if he was not himself a lawyer (in fact he was).

As for the seven-day time limit, it appears that all that was required was the filing of a written petition. *See* Mass. Regs.Code tit. 105, § 410.850. Quite possibly, there are circumstances—perhaps present here, although we doubt it—where it is simply infeasible for an appeal to be noticed within seven days. If the state then refused to permit a belated appeal thereafter, this might raise a question whether state remedies were adequate, *cf. Roy v. City of Augusta,* 712 F.2d 1517, 1523–24 (1st Cir.1983), but Herwins made no such effort to appeal even belatedly.[3]

When one steps back, Herwins plainly could have taken an immediate appeal on the emergency shutdown and shown that the heat had been turned back on and that the other violations were not threatening to health. This would have meant a brief inconvenience to Herwins and the tenants but it would likely have led to a prompt cancellation of the emergency closure. The idea that Herwins could ignore this state provided procedural remedy, and then create a federal case and collect $55,000 damages for a denial of procedural due process, just makes no sense.

Indeed, Massachusetts law created not only the means for a swift undoing of Marotta's alleged mischief, but probably a damage remedy as well. In this state, public employees have no immunity from claims based on intentional (not negligent) torts. *See* Mass. Gen. Laws ch. 258, § 10(c) (1998); *Breault v. Chairman of the Bd. of Fire Comm'rs.,* 401 Mass. 26, 513 N.E.2d 1277, 1282–1284 (Mass. 1987). Here, there is some reason to think that on his version of the facts Herwins has, or at least had, a state damage remedy against Marotta.

Accordingly, we conclude that a verdict should have been directed on count I. Count II merely reasserts that the lack of notice to Herwins in the letter of his right to seek further administrative review is an independent constitutional violation; and what we have already said confirms that the district judge properly dismissed that claim. Since both counts fail, the remaining arguments of parties as to damages, trial errors and attorney's fees for Herwins become moot.

The judgment of the district court on count I is *reversed* and the award of attorney's fees and costs is *vacated* and the judgment on count II is *affirmed.*

*It is so ordered.*

---

**3.** Massachusetts courts tend to allow appeals where the untimeliness was a consequence of the actions of an administrative official. *See Eli & Bessie Cohen Hillel Academy, Inc. v. Director of* the Div. of Employment Sec., 396 Mass. 150, 484 N.E.2d 1022, 1024 (Mass.1985); *Clemons v. Director of the Div. of Employment Sec.,* 395 Mass. 174, 478 N.E.2d 951, 953 (1985).