CHICOPEE LIONS CLUB *vs.* DISTRICT ATTORNEY FOR THE
HAMPDEN DISTRICT & others.

Hampden.    September 12, 1985. — November 18, 1985.

Present: HENNESSEY, C.J., WILKINS, LIACOS, ABRAMS, & O'CONNOR, JJ.

*District Attorney. Civil Rights,* Immunity of public official. *Practice, Civil,* Dismissal.

A district attorney who, upon learning of a scheduled "Monte Carlo Night" to be held by a nonprofit service organization, determined that such a fundraiser would be illegal and, as the event was about to begin, threatened to send in State troopers to shut down the event, thus causing its cancellation, was engaged in quasi judicial activity and thereby absolutely immune from suit by the organization under 42 U.S.C. § 1983 (1982), for allegedly violating its civil rights. [247-251]

A district attorney who threatened to send State troopers to shut down as illegal a "Monte Carlo Night" about to be held by a nonprofit service organization was engaged in performing his official duties, and, thus, was absolutely immune from liability to the organization under common law principles; moreover, as the activities of the district attorney were sufficiently related to his prosecutorial function, he was absolutely immune from suit by the organization under G. L. c. 12, § 11I, the Massachusetts Civil Rights Act. [251-252]

A judge in a civil action against a district attorney and other public entities did not err in dismissing the plaintiff's complaint under Mass. R. Civ. P. 12 (b) (6), rather than requiring the defendants to file an answer under Mass. R. Civ. P. 8 (b), where it was clear from the allegations of the complaint that the district attorney had been engaged in prosecutorial conduct, and thus was absolutely immune from suit. [253]

CIVIL ACTION commenced in the Superior Court Department on October 17, 1983.

A motion to dismiss was heard by *George J. Hayer,* J.

The Supreme Judicial Court granted a request for direct appellate review.

*George Nassar* for the plaintiff.

*Jacqueline L. Allen,* Assistant Attorney General, for the District Attorney for the Hampden District & another.

*Savino J. Basile,* for Hampden County, submitted a brief.

HENNESSEY, C.J. The plaintiff, Chicopee Lions Club (the club), brought a civil rights action against the district attorney for the Hampden District, Hampden County, and the Commonwealth of Massachusetts. All three defendants moved under Mass. R. Civ. P. 12 (b) (6), 365 Mass. 754 (1974), to dismiss the plaintiff's complaint for failure to state a claim upon which relief could be granted. A Superior Court judge granted the defendants' motion on February 13, 1984, and ordered the plaintiff's complaint dismissed.[1] We granted the plaintiff's application for direct appellate review.

In its complaint, the club sought redress under 42 U.S.C. § 1983 (1982) and G. L. c. 12, § 11I (1984 ed.), for the district attorney's alleged violation of its constitutional rights. Separate counts of the complaint charged the district attorney with negligent interference with contractual relations and defamation. The club alleged that the actions of the district attorney were to be imputed both to Hampden County and to the Commonwealth for the purpose of liability.

In dismissing the club's complaint, the judge ruled that the district attorney was absolutely immune from suit for actions taken within the scope of his "quasi judicial" duties as a prosecutor. The judge also dismissed the counts against Hampden County and the Commonwealth, holding that neither entity exerted direction or control over the district attorney, and that, since the prosecutor was immune from suit, these defendants could not be held liable under a theory of respondeat superior. The plaintiff argues on appeal that the district attorney is entitled

---

[1] The defendants' 12 (b) motion originally asserted as grounds for dismissal both lack of subject matter jurisdiction and failure to state a claim upon which relief could be granted. When the motion was heard orally, the defendants argued only the issue of the district attorney's immunity. In dismissing the plaintiff's complaint, the judge based his order solely on the ground of absolute immunity, but went on to note that he considered the grounds of lack of jurisdiction and failure to state a claim "waived" by the defendants. We recognize, of course, that a dismissal on the ground of absolute immunity is indeed a dismissal under 12 (b) (6) for failure to state a claim upon which relief can be granted, and we treat it as such for the purposes of this appeal.

to only a qualified immunity, and not an absolute immunity, for the allegedly unlawful actions at issue in this case.[2] We affirm.

We summarize the allegations of the plaintiff's complaint. The club is a nonprofit service organization chartered by the International Association of Lions Clubs. One of the purposes of the club is to provide aid to persons who suffer from sight or hearing impairments. Toward this end, the club planned a "Monte Carlo Night" to be held at the Hu Ke Lau Restaurant in Chicopee Falls on March 7, 1983.[3] The club obtained a "raffle or bazaar" permit from the city clerk of Chicopee for the purpose of sponsoring this fundraiser. The plaintiff also expended considerable money and effort in preparation for the "Monte Carlo Night," including entering into an agreement with a rental agency for the supply of simulated gambling equipment.

The district attorney did not learn of the scheduled "Monte Carlo Night" until the afternoon of March 7, 1983. He reacted loudly and angrily to the news of this impending fundraiser. The defendant telephoned the chief of police of Chicopee, who was already in attendance at the fundraiser, and notified him that the scheduled event was illegal. The district attorney threatened to send members of the State police force to raid the event, confiscate all gambling equipment and revenues, and arrest those patrons in attendance. The club alleges that the district attorney made these threats maliciously and with knowledge that the plaintiff's activities were lawful and properly licensed.

As a result of the district attorney's threats, and despite the fact that approximately 800 local citizens were already in at-

---

[2] The propriety of the court's dismissal of the club's complaint against the county and the Commonwealth is not before this court on appeal. The club has raised only the issue of the district attorney's immunity in both its application for direct appellate review and its brief.

[3] Monte Carlo nights had by this point become a successful and popular means of raising money for charities in the Commonwealth. Patrons of these fundraisers engage in simulated gambling, with proceeds going to the organizing charity.

tendance, the club was forced to cancel its "Monte Carlo Night" just prior to its commencement. The district attorney's conduct allegedly compelled the club to violate its contractual and advantageous relations, and damaged its reputation and ability to raise funds at future charitable events. The club further alleges that the district attorney deprived it of property without due process of law, and violated its rights to equal protection of the laws and to peaceful assembly under the United States Constitution and the Massachusetts Declaration of Rights.

Because the club has brought this action under 42 U.S.C. § 1983, as well as G. L. c. 12, § 11I, and State common law, we must examine the immunity of the district attorney under both Federal and State law principles.

1. *Section 1983 Immunity.*

Section 1983 of 42 U.S.C. by its terms admits of no immunities, but rather imposes liability upon "[e]very person" who, under color of State law, deprives others of their civil rights. The Supreme Court of the United States has held, however, that § 1983 must be read in harmony with general common law principles of tort immunity, reasoning that immunities well-grounded in history had not been abrogated by the general language of the Civil Rights Act of 1871. See *Pierson* v. *Ray,* 386 U.S. 547, 554 (1967) (absolute immunity for judges acting within their jurisdiction); *Tenney* v. *Brandhove,* 341 U.S. 367, 379 (1951) (absolute immunity for State legislative committee acting within traditional legislative capacity). In the case of *Imbler* v. *Pachtman,* 424 U.S. 409 (1976), the Supreme Court extended this immunity to a district attorney, holding that a prosecutor is absolutely immune from a damage suit under § 1983 for actions taken in initiating and pursuing a criminal prosecution.

The decision to extend absolute immunity to prosecutors under § 1983 was based upon the same policy considerations underlying judicial immunity. In *Imbler* the Court feared that unfounded litigation under § 1983 would undermine the independence of a public prosecutor, and divert his energies from his duties of office. "A prosecutor is duty bound to exercise his best judgment both in deciding which suits to bring and in

conducting them in court. The public trust of the prosecutor's office would suffer if he were constrained in making every decision by the consequences in terms of his own potential liability . . . ." *Id.* at 424-425. Out of concern for the integrity of the judicial system, the Supreme Court in *Imbler* thus extended absolute immunity to those prosecutorial activities "intimately associated with the judicial phase of the criminal process," such as initiating a prosecution or presenting the State's case. *Id.* at 430. It specifically left unanswered the question whether prosecutorial activity which is not closely associated with the trial process, such as certain administrative or investigative conduct, might warrant only a qualified immunity.

In determining the scope of prosecutorial immunity, our inquiry must thus focus not merely on the status or title of the officer, but also on the nature of the official behavior challenged. *Id.* Courts which have faced the issue of prosecutorial immunity since *Imbler* have utilized a functional analysis to distinguish between quasi judicial and non quasi judicial activity.[4] See *Gray* v. *Bell,* 712 F.2d 490, 499 (D.C. Cir. 1983), cert. denied, 465 U.S. 1100 (1984); *Mancini* v. *Lester,* 630 F.2d 990, 992 (3d Cir. 1980); Note, Supplementing the Functional Test of Prosecutorial Immunity, 34 Stan. L. Rev. 487 (1982). Where the activity in question is closely related to the judicial phase of a criminal proceeding, or involves the skills or judgment of an advocate, the activity will be subject to absolute immunity. See, e.g., *McGruder* v. *Necaise,* 733 F.2d 1146 (5th Cir. 1984) (district attorney absolutely immune in § 1983 suit for allegedly coercive use of prosecutorial power in offering to drop criminal charges in exchange for civil settlement); *Siano* v. *Justices of Mass.,* 698 F.2d 52 (1st Cir.),

---

[4] In using the term "quasi judicial," we do not intimate that a prosecutor exercises magisterial powers of any sort. Just as other jurisdictions have used this phrase since the Supreme Court's decision in *Imbler* (see, e.g., *Gray* v. *Bell,* 712 F.2d 490, 499 [D.C. Cir. 1983], cert. denied, 465 U.S. 1100 [1984]; *Siano* v. *Justices of Mass.,* 698 F.2d 52, 58 [1st Cir.], cert. denied, 464 U.S. 819 [1983]; *Goldschmidt* v. *Patchett,* 686 F.2d 582, 585 [7th Cir. 1982]), we invoke this term only to refer to those activities of a prosecutor which are closely related to the judicial and advocacy phase of a criminal proceeding.

cert. denied, 464 U.S. 819 (1983) (absolute immunity in § 1983 action for prosecutor who allegedly allowed the use of forged evidence against plaintiff). Where the challenged conduct is beyond the realm of trial preparation and involves the prosecutor in roles other than that of an advocate, the conduct is protected only by a qualified immunity. See, e.g., *Smith* v. *Updegraff,* 744 F.2d 1354 (8th Cir. 1984) (county attorney not absolutely immune in civil rights action for seeking discharge of deputy sheriff); *Halperin* v. *Kissinger,* 606 F.2d 1192 (D.C. Cir. 1979) (former Attorney General not protected by absolute immunity for allegedly unconstitutional wiretaps). The Supreme Court has implicitly accepted this bifurcated functional approach to prosecutorial immunity under § 1983. See *Harlow* v. *Fitzgerald,* 457 U.S. 800, 807 (1982).

Unfortunately, some prosecutorial activities do not lend themselves to such ready classification under this functional approach. Courts have reached widely varying results when attempting to categorize a district attorney's investigatory conduct for purposes of prosecutorial immunity. Where a prosecutor has focused his investigation on a particular individual or group, some courts have likened his investigatory activity to the gathering of evidence for trial, and therefore classified it as quasi judicial. See, e.g., *Forsyth* v. *Kleindienst,* 599 F.2d 1203 (3d Cir. 1979), cert. denied sub nom. *Mitchell* v. *Forsyth,* 453 U.S. 913 (1981) (former Attorney General absolutely immune from damage suit for warrantless electronic surveillance if criminal investigation and proceedings had already focused on plaintiffs); *Schieb* v. *Humane Soc'y,* 582 F. Supp. 717, 723 (E.D. Mich. 1984) (State prosecutors absolutely immune from civil rights suit for allegedly conspiring with police to entrap defendants during investigation of suspected dogfighting). Other courts have held that investigatory activity is outside the scope of protected quasi judicial conduct, since it does not require the skill or training of an advocate and is routinely carried out by the police, who are protected only by a qualified immunity under § 1983. See, e.g., *Marrero* v. *Hialeah,* 625 F.2d 499 (5th Cir. 1980), cert. denied sub nom. *Rashkind* v. *Marrero,* 450 U.S. 913 (1981) (only qualified immunity for

prosecutor who directed allegedly unlawful search of jewelry store); *Hampton* v. *Chicago,* 484 F.2d 602 (7th Cir. 1973), cert. denied, 415 U.S. 917 (1974) (only qualified immunity for State's attorney who planned raid of Black Panther apartment).

We believe the better rule is that a prosecutor who is conducting an investigation of a particular criminal suspect for the purpose of gathering evidence in preparation for trial is engaged in quasi judicial activity for purposes of prosecutorial immunity. Once a district attorney has focused his investigation on a specific suspect, and is directing the efforts of the police in regard to this investigation, he is no longer engaged in the routine investigative work which may be performed by a layman. Rather, he has made the apparent decision to initiate a prosecution and is utilizing his skills as an advocate to prepare the State's case against the defendant. This type of investigative activity by a prosecutor is sufficiently related to the judicial phase of the criminal process to warrant absolute immunity. See Note, Delimiting the Scope of Prosecutorial Immunity from § 1983 Damage Suits, 52 N.Y.U. L. Rev. 173, 199 (1977).

We believe that the district attorney's activities in this case were quasi judicial and thus absolutely immune from suit. Essentially, the prosecutor evaluated the information presented to him regarding the club's "Monte Carlo Night" and reached the conclusion that this fundraiser would be in contravention of the law. However erroneous or ill-informed this decision may have been, it was certainly within his duties as an advocate and officer of the court to render an opinion regarding the legality of such a large scale community activity. Cf. *Mother Goose Nursery Schools, Inc.* v. *Sendak,* 770 F.2d 668 (7th Cir. 1985) (State attorney protected by absolute immunity under § 1983 for disapproving of State's contract with plaintiff); *Goldschmidt* v. *Patchett,* 686 F.2d 582 (7th Cir. 1982) (State's attorney protected by absolute immunity for opinion letter written to fellow attorney advising him that method of advertising contravened State statute). The district attorney's threat to send in State troopers and raid the fundraiser constituted a warning

that he intended to gather evidence and initiate prosecutions if the event took place as scheduled. It was precisely this type of discretionary decision regarding whether and when to initiate and maintain a prosecution that the *Imbler* decision was designed to protect. *Imbler* v. *Pachtman, supra.* We thus affirm the order of the Superior Court in so far as it dismissed the club's § 1983 action against the district attorney.

2. *State Law Immunity.*

We now turn to the issue of prosecutorial immunity under State law. The club has brought suit against the district attorney both under the Massachusetts Civil Rights Act, G. L. c. 12, § 11I, and under common law tort theories. Because we hold that the scope of prosecutorial immunity under State common law and under G. L. c. 12 is at least as broad as under § 1983, we affirm the order of the Superior Court dismissing these counts against the district attorney as well.

We last considered the issue of a prosecutor's immunity at common law in the case of *Andersen* v. *Bishop,* 304 Mass. 396 (1939). In that case we held that a district attorney was absolutely immune from tort liability for entering a nolle prosequi, and thereby preventing the plaintiff from recovering a loss from the indicted defendants. The same policy considerations supporting an absolute immunity for judges under Massachusetts common law were found to justify a similar protection for public prosecutors. "The public interest requires that persons occupying such important positions as did these defendants and being so closely identified with the judicial department of the government should not be liable to private suits for what they do in the discharge of their official duties, and such officers are entitled to the protection that the law gives them, not because of concern for their personal immunity, but because such immunity tends to insure zealous and fearless administration of the law." *Id.* at 400. We relied in *Andersen* on the case of *Yaselli* v. *Goff,* 12 F.2d 396 (2d Cir. 1926), aff'd, 275 U.S. 503 (1927), in which the court held, after an exhaustive review of decisions both in this country and in England, that a prosecutor was absolutely immune from civil liability for the performance of his official duties. See also *Griffith* v. *Slinkard,* 146

Ind. 117 (1896) (local prosecutor absolutely immune from suit for adding plaintiff's name to grand jury's true bill after grand jury failed to return an indictment).

The actions of the district attorney in threatening to shut down the club's "Monte Carlo Night" constituted conduct "in discharge of [his] official duties" within the meaning of *Andersen, supra.* As the public officer primarily responsible for criminal prosecutions within Hampden County, the district attorney is expected to notify the police department about activities which he believes to be illegal and to initiate arrests and prosecutions of criminal suspects. The fact that the district attorney may have erred or even acted maliciously in this case is irrelevant. In order to ensure the unwavering administration of the laws, and to protect prosecutors from the debilitating task of defending themselves in civil lawsuits for their official acts, absolute immunity must at the same time shelter both the scrupulous and the errant public official.

The district attorney is similarly immune from suit under G. L. c. 12, § 11I. The issue of prosecutorial immunity under the Massachusetts Civil Rights Act is a question of first impression before this court. Like the Federal Civil Rights Act of 1871, 42 U.S.C. § 1983, the Massachusetts Civil Rights Act by its terms admits of no immunities. We do not presume, however, that the Legislature in passing this statute intended to abrogate a tradition of judicial and prosecutorial immunity rooted in history and based upon sound considerations of public policy. Cf. *Imbler,* 424 U.S. at 418. Nor need we decide, in defining the general scope of this prosecutorial immunity under G. L. c. 12, § 11I, whether to accept the more recent "functional approach" of the Federal courts under § 1983, or the somewhat broader "performance of official duties" test under State common law. As has already been determined, under either approach the district attorney is immune from suit in this case because his actions in questioning the legality of the club's activities are sufficiently related to the prosecutorial function to warrant absolute protection. We thus uphold the Superior Court's order dismissing the claim under G. L. c. 12, § 11I, against the district attorney.

3. *Dismissal of Complaint.*

Finally, we address the plaintiff's contention that the judge erred in dismissing its complaint under Mass. R. Civ. P. 12 (b) (6), rather than requiring the defendants to file an answer under Mass. R. Civ. P. 8 (b), 365 Mass. 749 (1974). One of the primary purposes of absolute immunity is to spare public officials the burden of having to defend their official actions in a civil lawsuit. See *Imbler, supra* at 423. Merely requiring a prosecutor to file a responsive pleading could involve him in vexatious and harassing litigation. Where, as in this case, it is clear from the allegations of the plaintiff's complaint that the district attorney was engaged in prosecutorial conduct, and thus subject to absolute immunity, no answer is required. A responsive pleading is necessary only where the good faith of the defendant is placed in issue under a qualified immunity defense.

In reaching our conclusions in this case, we are not unmindful of the fact that absolute prosecutorial immunity may leave aggrieved individuals without a civil damage remedy for deprivations of their constitutional rights. But the alternative of affording only a qualified immunity to a prosecutor for his prosecutorial acts would disserve the public interest by exposing even the most conscientious district attorneys to groundless litigation. In addition, absolute immunity from civil suit does not render the public entirely powerless to deter prosecutorial misconduct: elections and bar discipline proceedings are available mechanisms which may serve to check an overzealous district attorney. See *Imbler, supra* at 429.

*Judgment affirmed.*