DONALD A. DINSDALE[1] *vs.* COMMONWEALTH & others.[2]

Worcester. October 8, 1996. - February 3, 1997.

Present: ABRAMS, LYNCH, GREANEY, & FRIED, JJ.

*Civil Rights,* Immunity of public official. *Attorney General.*

Consideration of cases discussing the basis for and scope of immunity
extended to government attorneys for actions associated with their
conduct of civil litigation. [179-181]

In an action brought against two assistant attorneys general, asserting
violations of the plaintiff's civil rights under Federal and State laws,
arising from the nonpayment of judgments against the Commonwealth
in a prior action, the assistant attorneys general were protected from
such claims by absolute immunity, where their challenged activities
involved actions taken solely in their capacities as advocates for the
Commonwealth in civil litigation. [181-183]

CIVIL ACTION commenced in the Superior Court Depart-
ment on May 3, 1993.

The case was heard by *James P. Donohue,* J., on a motion
for summary judgment.

The Supreme Judicial Court on its own initiative transferred
the case from the Appeals Court.

*Judith S. Yogman,* Assistant Attorney General, for the
Commonwealth.

*Donald A. Dinsdale,* pro se.

ABRAMS, J. At issue is whether two assistant attorneys
general have personal immunity from civil rights claims under
Federal and State law. Donald and Patricia Dinsdale brought
a civil rights action against two assistant attorneys general
and the Commonwealth seeking redress in connection with
the nonpayment of judgments which had been entered against
the Commonwealth in a prior action. In their complaint, the

[1]Prior to oral argument, the parties stipulated to the dismissal, with prej-
udice, of all claims of Patricia J. Dinsdale, leaving Donald A. Dinsdale as
the sole plaintiff.

[2]Two assistant attorneys general. The assistant attorney general on ap-
peal for the Commonwealth was not trial counsel.

Dinsdales alleged that the judgments were not paid because the defendants (1) arbitrarily and intentionally refused to authorize payment, depriving the Dinsdales of their rights in violation of 42 U.S.C. § 1983 (1994); and (2) by threats and coercion, interfered with the Dinsdales' constitutional and statutory rights in violation of G. L. c. 12, §§ 11H and 11I. The defendants moved to dismiss the case or for summary judgment in their favor, partly on the grounds that the plaintiffs' claims against the assistant attorneys general in their individual capacities are barred by absolute or qualified immunity. After reviewing the affidavits and conducting a hearing, a Superior Court judge denied their motion to dismiss and for summary judgment. The defendant assistant attorneys general filed a notice of appeal. After some procedural delay, the appeal was entered in the Appeals Court. We transferred the appeal to this court on our own motion. We hold that the actions of the defendant assistant attorneys general are protected by absolute immunity from civil rights claims under State as well as Federal law. We reverse and remand to the Superior Court for entry of summary judgment in favor of the defendant assistant attorneys general.

The present action derives from a prior tort action which the Dinsdales brought in 1984 against the Commonwealth, acting by and through the Department of Public Works (DPW), for damage to their real property during the construction of Interstate Highway I-190. In November, 1990, a jury returned a verdict in favor of the Dinsdales, awarding them $60,000 for land damage which resulted from the Commonwealth's trespass on their land, and $15,000 for emotional distress. The assistant clerk executed separate judgments using standard forms on which the clerk filled in blanks so as to award prejudgment interest as well.[3]

In January, 1991, the Commonwealth filed an appeal.[4] In October, 1991, after nearly a year of inaction by the Commonwealth, the Dinsdales filed a motion to dismiss the Commonwealth's appeal for failure to order a transcript of the

[3]The prejudgment interest award was $47,780 on the land damage judgment and $11,945 on the emotional distress judgment. However, the jury award and the corresponding court order had made no reference to interest.

[4]The execution of the judgments was stayed during the pendency of the appeal. See Mass R. Civ. P. 62 (d), 365 Mass. 829 (1974).

trial. See Mass. R. A. P. 10 (c), as amended, 417 Mass. 1602 (1994). In November, 1991, after a hearing and argument by both parties, a Superior Court judge granted the Dinsdales' motion to dismiss, and the Commonwealth did not refile an appeal.[5] In March, 1992, the judge issued executions on the judgments and the Dinsdales presented them to the comptroller of the Commonwealth for payment. During the following year, the Dinsdales repeatedly attempted to obtain payment on the judgments, albeit with no success.

In early May, 1992, the Dinsdales called the comptroller's office and were informed that, as the tortfeasor agency, the DPW had to make the payment. In mid-May of 1992, the DPW told the Dinsdales that it had processed the paperwork and would submit the matter to the Legislature. After receiving no news or payment, the Dinsdales contacted their State senator's office. The senator's office learned the identity of the defendant assistant attorney general now handling the matter.[6] The Dinsdales' counsel telephoned the assistant attorney general and learned that the assistant attorney general had recommended that payment not be authorized while he explored possible avenues of appellate review or settlement. Despite numerous telephone calls by the senator's office to the assistant attorney general's office, no action was taken either to pay the judgments or to seek court relief.

In October, 1992, nearly two years after the jury verdicts, one year after the dismissal of the Commonwealth's appeal, and six months after execution of the judgments, the Dinsdales' counsel wrote directly to the Attorney General "out of total frustration over the non-payment of two executions against the Commonwealth which are being arbitrarily held hostage in your office." One month later, the Dinsdales' counsel received a letter from the other defendant assistant attorney general, the supervisor of the assistant attorney general handling the matter, summarizing the various legal grounds on which the two assistant attorneys general believed

[5]The Commonwealth claims it did not receive notice of the judge's ruling until February, 1992, when the assistant attorney general then assigned to the case called the clerk's office to check the status of the case before taking maternity leave.

[6]In accordance with State regulations, the DPW's counsel sought advice from the Attorney General's office as to whether the DPW should authorize payment. See 815 Code Mass. Regs. § 5.09 (1993).

they could challenge the judgments.[7] The letter from the supervisor indicated they would file a motion for relief, yet still no action ensued.

In February, 1993, the Dinsdales' counsel requested a conference call with the two assistant attorneys general. The parties disagree as to the tone and subject matter of the call, particularly with respect to the substance of any settlement offers extended. However, the record clearly reflects that no settlement was reached and that the two assistant attorneys general stated, once again, that they would file a motion for relief forthwith. The Dinsdales waited another three months for the two assistant attorneys general to take some action. Although the executions had now been outstanding for well over one year, and the time for filing an appeal from anything but the award of interest had long since passed, the assistant attorney general (not the supervisor) still had not filed the long-awaited motion for relief. Finally, the Dinsdales commenced this civil rights action in May, 1993.[8]

1. *Section 1983 immunity.* Although the defendant assistant attorneys general are certainly "persons" under 42 U.S.C. § 1983, the United States Supreme Court has established that the Federal civil rights statute must be read in accord with long-standing common law principles of tort immunity which serve public policy. See *Imbler* v. *Pachtman*, 424 U.S. 409, 430 (1976) (absolute immunity for prosecutors acting within their role in the judicial phase of a criminal proceeding); *Pierson* v. *Ray*, 386 U.S. 547, 554 (1967) (absolute immunity for judges acting within their judicial jurisdiction); *Tenney* v. *Brandhove*, 341 U.S. 367, 379 (1951) (absolute immunity for

[7]The supervisor's letter suggested that they were considering challenging the dismissal of the Commonwealth's appeal, the award of prejudgment interest, and the underlying trespass claim itself.

[8]On notice that the Dinsdales were suing him in his individual capacity, the assistant attorney general transferred the case to another assistant attorney general to avoid any conflict of interest. Subsequently, the Commonwealth paid the principal judgments in the original case, leaving only the award of prejudgment and postjudgment interest at issue. Over thirty months after the original entry of the judgments against the Commonwealth, the assistant attorney general moved under Mass. R. Civ. P. 60 (a), 365 Mass. 828 (1974), to eliminate the assessment of interest from the judgments. See *Dinsdale* v. *Commonwealth*, 39 Mass. App. Ct. 926 (1995) (granting relief under rule 60 [a] on the grounds that the assessment of interest was a clerical error and that G. L. c. 258, § 2, prohibits the recovery of interest from the Commonwealth in tort actions).

State legislative committee acting within traditional legislative power). We have addressed the application of immunity principles to government prosecutors for actions taken in initiating and pursuing criminal prosecutions. *Chicopee Lions Club* v. *District Attorney for the Hampden Dist.*, 396 Mass. 244 (1985). However, we have not considered the scope of immunity extended to government attorneys for actions associated with their conduct of civil litigation.

Government officials are normally protected only by a qualified immunity, and those officials seeking an absolute exemption from personal liability must show that public policy requires an immunity of that scope. See *Barrett* v. *United States*, 798 F.2d 565, 571 (2d Cir. 1986), citing *Butz* v. *Economou*, 438 U.S. 478, 506 (1978). The decision to extend absolute immunity to prosecutors was based on the concern that, if prosecutors had only a qualified immunity, the threat of § 1983 suits would undermine the independence of public prosecutors and divert their energies from their official duties. *Chicopee Lions Club, supra* at 247-248, quoting *Imbler, supra* at 424-425 ("A prosecutor is duty bound to exercise his best judgment both in deciding which suits to bring and in conducting them in court. The public trust of the prosecutor's office would suffer if he were constrained in making every decision by the consequences in terms of his own potential liability . . ."). Thus, to protect the integrity of the judicial system, prosecutors are absolutely immune from civil rights suits for those activities closely related to the judicial phase of a criminal proceeding, or involving the skills or judgment of an advocate. See *Chicopee Lions Club, supra* at 248.

Other jurisdictions have extended this absolute immunity to government attorneys in their conduct of civil litigation as well. See, e.g., *Barrett, supra* at 572; *Murphy* v. *Morris*, 849 F.2d 1101, 1105 (8th Cir. 1988); *Fry* v. *Melaragno*, 939 F.2d 832, 837 (9th Cir. 1991). These courts have concluded that all three criteria articulated by the United States Supreme Court as determinative of whether to grant an official absolute immunity are satisfied by the integral function of such attorneys in the judicial process. See, e.g, *Barrett, supra* at 571-573, citing *Mitchell* v. *Forsyth*, 472 U.S. 511, 521-523 (1985). We agree.

First, there is an historical and common law basis for granting absolute immunity to government litigators for the perfor-

mance of their duties in civil litigation. See *Barrett, supra* at 572, citing *Yaselli* v. *Goff*, 12 F.2d 396, 402 (2d Cir. 1926), aff'd, 275 U.S. 503 (1927), and *Hoar* v. *Wood*, 3 Met. [44 Mass.] 193, 197-198 (1841). Second, conducting civil litigation on behalf of the government poses obvious risks of entanglement of such attorneys in vexatious and burdensome litigation by disgruntled litigants.[9] *Barrett, supra* at 572. See *Murphy, supra* at 1105 ("Assistant attorneys general should not be inhibited in the performance of their duties, or in their choice of litigation strategies, by the threat of harassing lawsuits"). Third, such attorneys are still subject to other checks whereby an abuse of authority might be redressed, such as sanctions in the underlying case, contempt, or bar disciplinary proceedings. See *Fry, supra* at 838; *Barrett, supra* at 572. The grounds for granting government litigators an immunity of such scope is further buttressed by the United States Supreme Court's extension of absolute immunity to agency attorneys for certain actions taken in administrative proceedings. See *Butz, supra* at 516-517.[10]

We add that the scope of immunity depends not merely on the status or title of the public official, but on the nature of the official behavior challenged. *Chicopee Lions Club, supra* at 248. See *Imbler, supra* at 430. As with government prosecutors, the cloak of absolute immunity extends only to the attorneys' performance of standard advocacy functions for the Commonwealth. Where the challenged activity is beyond the realm of litigation and involves the assistant attorneys general in roles other than that of advocates, the activity is protected only by a qualified immunity. See *Chicopee Lions Club, supra* at 249. On this record, the challenged activities of the defendant assistant attorneys general involve them solely in their capacities as advocates for the Commonwealth in civil litigation.

---

[9]To the extent that the defendants suggest that Dinsdale is a "disgruntled litigant," we think that on these facts he is understandably and justifiably so.

[10]The strong Federal policy of providing immunity for government officials requires that immunity questions in the Federal courts be "resolved at the earliest possible stage of litigation." See *Anderson* v. *Creighton*, 483 U.S. 635, 646 n.6 (1987). Under Federal law, the denial of an immunity claim is immediately appealable. *Mitchell* v. *Forsyth*, 472 U.S. 511, 526, 530 (1985) ("the entitlement is an immunity from suit, rather than a mere defense to liability"). See *Behrens* v. *Pelletier*, 516 U.S. 299, 311-312 (1996) (successive pretrial claims of immunity are appealable).

Specifically, the defendants provided legal advice to the client agency, the DPW, as to potential postjudgment remedies, they developed litigation strategy for challenging the judgments, and they engaged in settlement negotiations with opposing counsel. Although the primary litigation of the underlying action had already taken place, the pursuit of potential appellate avenues or, alternatively, settlement are standard advocacy functions which such attorneys regularly perform on behalf of the Commonwealth. Although the defendant assistant attorneys general may have been sloppy or careless in dispatching their official duties, "[t]he immunity attaches to [the] function, not to the manner in which [they] performed it." *Barrett, supra* at 573.

2. *State law immunity.* The Dinsdales have brought suit against the two assistant attorneys general under the Massachusetts Civil Rights Act, G. L. c. 12, §§ 11H and 11I. In *Chicopee Lions Club, supra* at 251, we established that the scope of prosecutorial immunity under G. L. c. 12 is "at least as broad as under § 1983." See *Rodriques* v. *Furtado,* 410 Mass. 878, 881 (1991), citing *Duarte* v. *Healy,* 405 Mass. 43, 46 (1989) (stating in dictum that the legislative intent in enacting the State civil rights statute was to adopt the standard of immunity for public officials developed under 42 U.S.C. § 1983).

We recognize that extending absolute immunity to assistant attorneys general for their conduct of civil litigation "may leave aggrieved individuals without a civil damage remedy for deprivations of their constitutional rights. But the alternative of affording [them] only a qualified immunity . . . would disserve the public interest by exposing even the most conscientious [government litigators] to groundless litigation." *Chicopee Lions Club, supra* at 253.

The conduct of the assistant attorneys general and their treatment of citizens does not reflect well on these attorneys, the agency[11] they represent, the office of the Attorney General, and the bar. However, "absolute immunity must at the

---

[11]The full extent of the DPW's conduct is not included in this record.

same time shelter both the scrupulous and the errant public official." *Chicopee Lions Club, supra* at 252. We reverse and remand to the Superior Court for entry of summary judgment in the defendants' favor.[12]

*So ordered.*

---

[12]The Dinsdales may seek relief from the Legislature.