[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION MOTION TO DISMISS
On November 30, 2001, the plaintiff, Jane S. Bailey, filed a three count complaint against the defendants, Attorney General Richard Blumenthal, Comptroller Nancy Wyman and Assistant Attorneys General, Thadd Gnocchi and Donna Hixon-Smith, alleging vexatious suit, intentional infliction of emotional distress and violation of her federally protected rights pursuant to 42 U.S.C. § 1983.[1] The plaintiff alleges that the underlying state action that gave rise to these claims was a four count lawsuit against her commenced on July 21, 2000 in the Hartford Superior Court, Docket No. CV 00 0801023, bearing the caption, State ofConnecticut, Office of the Comptroller v. Jane S. Bailey alleging fraud, misrepresentation, breach of contract and unjust enrichment.
The defendants move to dismiss the plaintiff's entire complaint, pursuant to Practice Book § 10-30, on the ground that the court lacks jurisdiction over the subject matter because (1) the slate is the real party in interest and, therefore, sovereign immunity bars this action; (2) statutory immunity, pursuant to General Statutes § 4-165,[2] bars the plaintiff from seeking personal liability from the defendants; and (3) the defendants, as state officers, are entitled to absolute immunity from a civil suit for damages under 42 U.S.C. § 1983.
The undisputed facts relevant to the resolution of the motion to dismiss, are as follows: The plaintiff is a former state employee who worked at Greater Hartford Community College.[3] She was a member of the Administrative and Residual Bargaining Unit and subject to a collective bargaining agreement. The collective bargaining agreement provided for an emergency sick leave bank[4] for use by full-time permanent employees who had exhausted all sick leave, personal leave and vacation time. The sick leave bank fund was established through contributions of hours from both the state and its employees.[5]
On April 29, 1991, the plaintiff suffered a work related psychiatric CT Page 1145 injury and remains unemployed.[6] On May 29, 1991, she filed an application for sick leave bank benefits, which was approved by the committee with payments to commence July 13, 1991 and ending on March 19, 1992. In July 1991, the plaintiff applied for workers' compensation coverage. On January 23, 1996, the plaintiff received an award to cover the period of May 17, 1991 through January 20, 1994. The state Comptroller's office, acting through its counsel, the attorney general's office, filed the July 2000 lawsuit, seeking reimbursement for double payments of benefits (sick leave bank and workers' compensation) allegedly paid to the plaintiff.[7]
On September 11, 2001, the Appellate Court, in Bailey v. State,65 Conn. App. 592, 783 A.2d 491 (2001), reversed the plaintiff's award for workers' compensation benefits without addressing the issue of double payments. The plaintiff's period of disability remains disputed and is currently pending before the workers' compensation review board. In light of the Appellate Court decision, on November 13, 2001, the attorney general's Office withdrew the July 2000 lawsuit. On November 30, 2001, the plaintiff filed the present action.
 I
"A motion to dismiss shall be used to assert lack of jurisdiction over the subject matter, essentially asserting that the plaintiff cannot as a matter of law and fact state a cause of action that should be heard by the court." (Internal quotation marks omitted.) Kizis v. Morse DieselInternational, Inc., 260 Conn. 46, 51, 794 A.2d 498 (2002). "Subject matter jurisdiction involves the authority of the court to adjudicate the type of controversy presented by the action before it. . . . [A] court lacks discretion to consider the merits of a case over which it is without jurisdiction. . . . The objection of want of jurisdiction may be made at any time . . . The requirement of subject matter jurisdiction cannot be waived by any party and can be raised at any stage in the proceedings. . . . If at any point, it becomes apparent to the court that such jurisdiction is lacking, the [action] must be dismissed." (Internal quotation marks omitted.) Id., 52 "It is well established that [i]n ruling upon whether a complaint survives a motion to dismiss, a court must take the facts to be those alleged in the complaint, including those facts necessarily implied from the allegations, construing them in a manner most favorable to the pleader (Internal quotation marks omitted.)Lawrence Brunoli, Inc. v. Branford, 247 Conn. 407, 410-11, 722 A.2d 271
(1999).
 II CT Page 1146 A Sovereign Immunity
The defendants' first ground in support of their motion to dismiss is that the plaintiff's claim is barred by sovereign immunity. "[T]he doctrine of sovereign immunity implicates subject matter jurisdiction and is . . . a basis for granting a motion to dismiss)' (Internal quotation marks omitted.) Kizis v. Morse Diesel International, Inc., supra,260 Conn. 51. "The doctrine of sovereign immunity protects state officials and employees from lawsuits resulting from the performance of their duty. The doctrine protects the state against lawsuits as well as protecting against liability, and in effect, [it protects] against having to litigate at all." (Internal quotations marks omitted.) Hultman v.Blumenthal, 67 Conn. App. 613, 620, 787 A.2d 666. cert. denied,259 Conn. 929, 793 A.2d 253 (2002). The plaintiff brings the present suit against the defendants only in their official capacities but contends that the actions of the defendants were in excess of statutory authority and thus fall within an exception to the doctrine of sovereign immunity. (Plaintiff's Memorandum of Law in Opposition, p. 18.)
"[B]ecause the state can act only through its officers and agents, a suit against a state officer concerning a matter in which the officer represents the state is. in effect, against the state . . . In its pristine form, the doctrine of sovereign immunity would exempt the state from suit entirely, because the sovereign could not be sued in its own courts and there can be no legal right as against the authority that makes the law on which the tight depends. . . . This absolute bar of actions against the state has been greatly modified both by statutes effectively consenting to suit in some instances as well as by judicial decisions in others." (Citations omitted) Shay v. Rossi, 253 Conn. 134,168, 749 A.2d 1147 (2000), The judicial decisions include cases in which it is alleged that the defendant state officials have acted in excess of their statutory authority. The rationale for this exception is that "[t]he interest in the protection of the plaintiff's rights to be free from the consequences of such action outweighs the interest served by the sovereign immunity doctrine." (internal quotation marks omitted.) Id., 169.
Although our Supreme Court has never defined the precise contours of the in excess of statutory authority doctrine which removes the shield of sovereign immunity doctrine from state officials sued in their official capacities, "(Citation omitted.) Shay v. Rossi, supra,253 Conn. 171, it has found that the line is somewhere between "[t]he standard for abrogation of judicial immunity [conduct so far outside the CT Page 1147 normal scope of judicial functions that the judge in effect is no longer acting as a judge] . . . and . . . a process of statutory interpretation [that] yields a conclusion that the state officials acted beyond their authority." Id., 172.
"[I]n order to overcome sovereign immunity, [the plaintiff] must do more than allege that the defendants' conduct was in excess of their statutory authority; [she] also must allege or otherwise establish facts that reasonably support those allegations" Id., 174-75. "In order to determine if a state actor's conduct is caused in the discharge of his or her duties or within the granted statutory authority, it is necessary-y to examine the nature of the alleged conduct and its relationship to the duties incidental to the employment." Martin v. Brady, 261 Conn. 372,377, 802 A.2d 814 (2002).
In the present action, the plaintiff maintains that the defendants are not protected by sovereign immunity because they acted in excess of their statutory authority in filing the July 2000 lawsuit.[8] She claims that the defendants knew she was "under a protective order in an administrative proceeding due to her fragile psychological state" and that the state had no claim to the sick leave bank funds according to the terms of the collective bargaining agreement.[9] She further claims that the defendants have resisted her application for state service connected disability "despite a finding of compensability and they illegally canceled her insurance and refused commissioner' ordered medical care." The plaintiff asserts that these facts,[10] construed broadly in her favor, support the allegations of her complaint that the defendants actions were "willful, vindictive and malicious."
In support of their motion, the defendants argue that the doctrine of sovereign immunity applies because the defendants were perfuming a j) public function, pursuant to General Statutes § 3-112[11], in seeking to reimburse the state treasury for the duplicate payment of benefits to the plaintiff. They maintain that the state's voluntary withdrawal of its civil complaint to recover a double benefit paid to the plaintiff served as the catalyst for this lawsuit and that the plaintiffs allegations are "conclusory" and "do not pass the threshold test imposed by sovereign immunity." (Defendants' Memorandum of Law. pp. 4, 5 and 8.)
By the plaintiff's own admission, she read the sick leave bank guidelines in her application dated May 29, 1991. (Plaintiff's Exhibit 3, Application for A R Sick Leave Bank Use.) In so doing, she acknowledged reading the eligibility requirements for the filing of benefits and the prohibition of filing for sick leave bank benefits CT Page 1148 simultaneously with a workers' compensation claim. The plaintiff further admits that she received partial workers' compensation benefits from April 30, 1991 to January 20, 1994, which period overlaps with the period from June 13, 1991 through March 19, 1992 during which she received sick leave bank benefits. The plaintiff maintains, however, that the defendants could not have recovered in the July 2000 lawsuit because the sick bank is not an employer fund, the employer did not advance any compensation and the sick bank is not subject to offset for receipt of workers' compensation benefits. Therefore, she argues that "There was no legal or justifiable action that could be brought" against her (Plaintiff's Memorandum of Law in Opposition, pp. 12, 13 and 19.)
As previously noted, the sick leave bank fund is comprised of contributions from the state and its employees. The sick leave bank guidelines provide specifically that: "If an individual receives the benefits of this Bank during the pendency of a contested Workers' Compensation claim, the individual shall assign such portion of the award as may ultimately be granted to reimburse the Bank, should the claim succeed." (Plaintiff's Supplemental Brief, Exhibit 2, Sick Leave Bank Guidelines.) Consequently, the plaintiff is required to reimburse the fund for tiny alleged overpayments. Although the matter is currently pending before the workers' compensation review board, there is no dispute that there was a period of time (from June 13, 1991 through March 19, 1992), prior to the July 2000 lawsuit brought by the defendants, for which the plaintiff received double benefits.
The duties of the state defendants are defined in General Statutes § 3-125 (attorney general's duties) and General Statutes § 3-112
(comptroller's duties). These duties are not governed or abrogated by the sick leave bank guidelines. The defendants were authorized to initiate the July 2000 lawsuit in accordance with the foregoing provisions. Their actions were not illegal, contrary to public policy or self-serving and they cannot be said to have acted in excess of their statutory authority. While the plaintiff makes forceful allegations, they are conclusory, unsubstantiated and do not support the exception she claims to sovereign immunity.[12]
Accordingly. the defendants' motion to dismiss for lack of subject matter jurisdiction based on sovereign immunity is granted.
 B Statutory Immunity — 42 U.S.C. § 1983
Since this case involves claims against the defendants in their CT Page 1149 official capacities only and sovereign immunity is held to apply, the issue of statutory personal immunity pursuant to General Statutes §4-165, is irrelevant and does not require further discussion. See Shayv. Rossi, supra, 253 Conn. 164.
 C Absolute Immunity — 42 U.S.C. § 1983
For the reasons articulated by the United States Supreme Court inImbler v. Pachtman, 424 U.S. 409, 427-430, 96 S.Ct. 984, 47 L.Ed.2d 128
(1976), the defendants are absolutely immune from liability under42 U.S.C. § 1983 in their conduct of civil litigation. See alsoDinsdale v. Commonwealth, 424 Mass. 176, 181, 675 N.E.2d 374 (1997) (government attorneys are absolutely immune in connection with the performance of their duties in civil litigation). Further, neither state nor state officials sued in their official capacities are persons within the meaning of § 1983, Will v. Michigan Dept. of State Police,491 U.S. 58, 71, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989). In enacting § 1983, Congress did not intend to override "[t]he well-established immunity of a State from being sued without its consent." id., 67.
 CONCLUSION
The court having found that tile plaintiffs claims are barred by sovereign immunity; there is no subject matter jurisdiction and the motion to dismiss all three counts of the plaintiff's complaint is granted.
BY THE COURT
 ___________________ Peck, J.