NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

23-P-985

JOAO DEPINA

vs.

WORCESTER COUNTY DISTRICT ATTORNEY'S OFFICE & others.[1]

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

In 2021, Suffolk County District Attorney Rachael Rollins

caused a criminal complaint to be filed against the plaintiff,

Joao DePina, alleging intimidation after he heckled Rollins

during a televised press conference.[2]  At the time, DePina was

_____

[1] Joseph D. Early, Jr.; Anthony Melia; Dante Williams, in their personal and official capacities; Rachael Rollins, in her personal capacity; and the Boston Police Department.

[2] During the press conference, DePina interrupted Rollins repeatedly, loudly questioning her on policies related to gun violence, her nomination as the United States Attorney for the District of Massachusetts, and her lack of response to his brother's fatal shooting.  He also "criticize[d] Rollins for abusing her power as a public official."  DePina shouted to Rollins that she was "emotionally disturbed" and made derogatory comments about her boyfriend.  He referred to one of his pending criminal cases involving alleged harassment of a State representative using a State-issued cell phone.

both a "community activist" and a defendant in three pending criminal cases being prosecuted by the Suffolk County district attorney's office. DePina video-recorded events beginning before and extending after the press conference, then uploaded the recording to his Facebook Live page. Boston Police Detective Dante Williams, who was present at the press conference, filed a police report detailing DePina's behavior at the press conference. Williams's police report was appended to an application for a criminal complaint filed in the Boston Municipal Court (BMC).[3] A magistrate found probable cause to issue the complaint against DePina for intimidation pursuant to G. L. c. 268, § 13B. The Suffolk County district attorney's office recused itself, and the Worcester County district attorney's office took over prosecution of the case. In 2022, a BMC judge dismissed the intimidation complaint for lack of probable cause. DePina then commenced this action in the Superior Court alleging malicious prosecution, malicious abuse of process, retaliation for free speech, intentional infliction of emotional distress, and negligent infliction of emotional distress against Rollins, the Worcester County district

---

[3] Williams was not the complainant; the complainant was Bienvenido Delacruz, presumably another Boston police officer. We note that Williams's name does appear as the complainant in one portion of the application for criminal complaint, but the signature on both the application and the complaint, as well as the printed name of the complainant is "Bienvenido Delacruz."

2

attorney's office, Worcester County District Attorney Joseph Early, Jr., Assistant District Attorney Anthony Melia, the Boston Police Department, and Detective Williams. A judge allowed the defendants' motions to dismiss each of these claims based on absolute and qualified immunity. DePina appeals only the dismissals of his claims against Rollins and Williams.[4] We affirm.

Discussion. 1. Standard of review. "We review the allowance of a motion to dismiss de novo, accepting as true all well-pleaded facts alleged in the complaint" (citation omitted). Osborne-Trussell v. Children's Hosp. Corp., 488 Mass. 248, 253 (2021). To survive a motion to dismiss, the plaintiff must present, at the pleading stage, "factual 'allegations plausibly suggesting (not merely consistent with)' an entitlement to relief." United Oil Heat, Inc. v. M.J. Meehan Excavating, Inc., 95 Mass. App. Ct. 579, 581 (2019), quoting Iannacchino v. Ford Motor Co., 451 Mass. 623, 636 (2008).

---

[4] During oral argument, DePina conceded that District Attorney Early, Assistant District Attorney Melia, and the Worcester County district attorney's office acted solely within the bounds of their official duties as prosecutors, and thus were entitled to absolute prosecutorial immunity.

3

2.  Rollins's absolute prosecutorial immunity.[5]  The doctrine of absolute prosecutorial immunity protects prosecutors from "private suits for what they do in the discharge of their official duties" (citation omitted).  Chicopee Lions Club v. District Attorney for the Hampden Dist., 396 Mass. 244, 251 (1985).  Prosecutors "are entitled to the protection the law gives them, not because of concern for their personal immunity, but because such immunity tends to insure zealous and fearless administration of the law" (citation omitted).  Id.  "[T]he touchstone for absolute immunity for prosecutorial functions is conduct that is 'intimately associated with the judicial phase of the criminal process.'"  C.M. v. Commissioner of the Dep't of Children & Families, 487 Mass. 639, 648 (2021), quoting Imbler v. Pachtman, 424 U.S. 409, 430 (1976).

DePina contends that Rollins abused her power "to target [DePina] for prosecution."  His complaint alleged that "Rollins caused a criminal complaint to be filed."  It also alleged that Detective Williams filed his report, which was the basis for the criminal complaint, at Rollins's "behest."

DePina argues that Rollins was not entitled to absolute immunity because she was "merely a complaining witness."  See

---

[5] Although the plaintiff argues that absolute prosecutorial immunity should be abolished, he acknowledges that this court lacks the authority to do so.  See Commonwealth v. Dube, 59 Mass. App. Ct. 476, 485-486 (2003).

4

C.M., 487 Mass. at 647-648 (prosecutor not entitled to absolute immunity when acting as witness by attesting to facts in support of warrant). However, this assertion is untenable given the allegations of DePina's own complaint. Moreover, it is belied by DePina's argument on appeal that Rollins abused her power to target DePina for prosecution.

In DePina's complaint, he alleged that "Rollins caused a criminal complaint to be filed." He also alleged that Detective Williams filed his report, which was the basis for the criminal complaint, at Rollins's "behest." A private citizen does not have the legal authority to "cause" a criminal complaint to be filed or to command a police officer to file a report to initiate a prosecution. See Matter of Chapman, 482 Mass. 1012, 1014 (2019) (private individuals have no standing to demand prosecution where Commonwealth alone has prerogative and responsibility to prosecute criminal offenses); Commonwealth v. Orbin O., 478 Mass. 759, 765-766 (2018) (private citizen lacks judicially cognizable interest in prosecution).

To the extent DePina contends that Rollins's "personal influence" was a separate power distinct from her authority as a prosecutor in this case, we disagree. Only a prosecutor, in exercising her discretion, can decide which criminal complaints will be filed. See Commonwealth v. Johnson, 75 Mass. App. Ct. 903, 906 (2009) (Commonwealth retains authority to make

5

determination regarding charging decisions). Because we conclude that Rollins's ability to "cause" the criminal complaint to be filed was inextricable from her authority as Suffolk County's chief prosecutor, we agree with the motion judge that Rollins's conduct was a prosecutorial advocacy function necessarily implicating her "exercise [of] independent judgment" in deciding "which suits to bring and in conducting them in court" (citation omitted). Kalina v. Fletcher, 522 U.S. 118, 125 (1997). Initiating DePina's prosecution and directing police to take steps necessary to prosecute him for his conduct at the press conference were actions "sufficiently related to the prosecutorial function to warrant absolute protection." Chicopee Lions Club, 396 Mass. at 252. Thus, Rollins was entitled to absolute prosecutorial immunity and the claims against her were properly dismissed.

3. Williams's qualified immunity. "[Police] officers performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known" (quotation and citation omitted). Gallagher v. South Shore Hosp., Inc., 101 Mass. App. Ct. 807, 828 (2022). Analysis of the qualified immunity defense requires a two-part inquiry into whether,

6

> "[t]aken in the light most favorable to the party asserting
> the injury . . . the facts alleged show the officer's
> conduct violated a constitutional right, and, if so,
> whether the right was clearly established so that it would
> be clear to a reasonable officer that his conduct was
> unlawful in the situation he confronted" (quotations and
> citation omitted).

Longval v. Commissioner of Correction, 448 Mass. 412, 419 (2007).

According to DePina's complaint, Detective Williams violated his constitutional rights by knowingly filing a false police report in response to DePina's exercise of free speech at the press conference. DePina also alleged that Williams conspired with Rollins to "create" the police report that led to DePina's criminal prosecution for Rollins's benefit. The complaint further alleged that Williams initiated[6] a criminal complaint against DePina for intimidation that no reasonable police officer "could have believed . . . was valid and was anything other than a retaliatory act against DePina for his [protected] speech [against Rollins]."[7]

DePina does not identify, in his complaint or on appeal, any particular statements in Detective Williams's police report

---

[6] Again, we note that Williams was not the complainant.

[7] As relevant here, intimidation is established by probable cause of (1) willful (2) direct or indirect (3) threats, intimidation or harassment (4) of an attorney (Rollins) (5) with the intent to or with reckless disregard for the fact that it may (6) impede, obstruct, delay, prevent or otherwise interfere with a criminal proceeding. G. L. c. 268, § 13B.

7

that were false.  Williams stated in his report that he witnessed DePina from about ten feet away making loud, heckling, personally offensive statements to Rollins during her press conference.  The report also stated that Rollins was aware at the time that DePina had three pending criminal cases being prosecuted by the Suffolk County district attorney's office.  It described DePina as making "indirect" references to those cases during his "verbal offensive," and stated that DePina appeared to intend to "effect or interfere" with his pending cases.  The report noted that one of those cases was scheduled to be heard in court less than a week after the press conference.  Finally, Williams's narrative cited DePina's "multiple" unsuccessful prior attempts to contact Rollins to discuss his pending cases and a "similar incident" a few months prior, from which "this incident appear[ed] to be an escalation."

William's descriptions of the scene, as well as the tone, volume, tenor, and content of DePina's statements were corroborated by DePina's Facebook Live video recording.  See Rosenberg v. JPMorgan Chase & Co., 487 Mass. 403, 408 (2021) (any extrinsic documents attached or incorporated by reference to complaint may be considered in motion to dismiss).  DePina also referred to his pending Suffolk County cases in the Facebook Live video, and his complaint implicitly acknowledged that he was being prosecuted by Rollins's office on more than

8

one case at the time of the press conference.[8]  Williams's statement of his own impression of DePina's apparent intent when he referred to his pending criminal cases cannot be said to be false.  Finally, DePina's complaint did not dispute that he attempted to contact Rollins privately about his cases and had appeared at an earlier press conference.  In short, there were no "well-pleaded" allegations of a false police report by Williams.  See Verveine Corp. v. Strathmore Ins. Co., 489 Mass. 534, 538 (2022) ("[w]e do not regard as 'true' legal conclusions cast in the form of factual allegations" [citation omitted]).  Thus, even in the light most favorable to DePina, the facts alleged in his complaint do not show that Williams violated a constitutional right.  See Longval, 448 Mass. at 419.

Moreover, we disagree with DePina that no reasonable police officer could have believed that criminally charging DePina based on his behavior at the press conference was anything other than retaliation for his exercise of free speech.

> "Because probable cause, by its nature, turn[s] on the assessment of probabilities in particular factual contexts and cannot be reduced to a neat set of legal rules, qualified immunity will protect an officer in the absence of an identified body of relevant case law that clearly establishes the answer with respect to probable cause" (quotation and citation omitted).

---

[8] We take Williams's statement that he "secured a copy of the recording" to mean that he reviewed the video before writing his report.

9

<u>Ortiz</u> v. <u>Morris</u>, 97 Mass. App. Ct. 358, 363 (2020). Here, no such identified body of case law exists.[9] Furthermore, taken together, the facts outlined in Detective Williams's police report, supplemented by the Facebook Live video, supported at least arguable probable cause to charge DePina with intimidation. See <u>Hrycenko</u> v. <u>Commonwealth</u>, 459 Mass. 503, 511 (2011) ("Words do not need to be expressly intimidating, threatening, or harassing" to constitute intimidation); see also <u>Commonwealth</u> v. <u>McCreary</u>, 45 Mass. App. Ct. 797, 799 (1998) (purpose of witness intimidation statute is to prevent interference with administration of justice). Based on the circumstances known to Detective Williams at the time he wrote his report, it would not have been clear to a reasonable police officer that it was unlawful to follow the district attorney's order to write a report that initiated the process to prosecute DePina for intimidation. We thus conclude that Detective Williams was protected by qualified immunity for his role in the process that resulted in the criminal complaint for intimidation against DePina. The claims against Detective Williams were properly dismissed. See <u>Longval</u>, 448 Mass. at 418 n.10

---

[9] The only authority cited by DePina is a United States Court of Appeals for the Third Circuit case that, unlike the present case, turned on witness credibility. See <u>Losch</u> v. <u>Borough of Parkesburg, Pa.</u>, 736 F.2d 903, 909 (3d Cir. 1984).

(qualified immunity may be decided on motion to dismiss where applicability clear from allegations in complaint).

Judgment affirmed.

By the Court (Rubin, Hand & Brennan, JJ.[10]),

*Paul Little*

Clerk

Entered:  January 31, 2025.

---

[10] The panelists are listed in order of seniority.