**LEGACY HEALTHCARE, INC.,**
Plaintiff–Appellant,

v.

Richard **FELDMAN**, in his official capacity as Commissioner of the Indiana State Department of Health, Clara McGee, Gerald Coleman, et al., Defendants–Appellees.

No. 00–1615.

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 28, 2000.

Decided March 28, 2001.

Rehearing and Rehearing en banc Denied
April 4, 2001.

Before Hon. DANIEL A. MANION,
Hon. ILANA DIAMOND ROVNER, Hon.
DIANE P. WOOD, Circuit Judges.

ORDER

Legacy Healthcare, a multi-facility healthcare provider in Indiana, sought a

preliminary injunction in federal court directing state Medicaid officials to provide Legacy with a hearing on the termination of its Medicaid certification. Legacy argued that state officials wrongfully deprived one of the Legacy facilities of its property right in certification without due process. The district court denied the preliminary injunction, concluding that Legacy was provided with adequate process but failed to use it. Thus it did not show a likelihood of success on the merits of its claim. Legacy appeals, and we affirm.

## I.

Legacy Healthcare ("Legacy") operates an intermediate care facility for mentally retarded persons called the New Horizon Development Center ("New Horizon"). The facility's residents depend on Medicaid funds to support their care. Under Indiana's Medicaid system, Medicaid providers operate under a provider agreement with the State's Medicaid agency, the Indiana Family and Social Services Administration ("FSSA"). The FSSA operates Indiana's Medicaid program through a unit called the Office of Medicaid Planning and Policy ("OMPP"). Federal Medicaid law requires the OMPP to designate a survey agency that evaluates facilities to determine whether they meet the requirements for participation in the Medicaid program. 42 U.S.C. §§ 1396a(a)(9), (33). The survey agency in Indiana is the Indiana State Department of Health ("ISDH").[1] The OMPP must obtain notice of a facility's certification from the ISDH before it approves a provider agreement. 42 C.F.R. § 442.101. Under the provider agreement, a facility receives Medicaid funds for services provided.

A facility's certification and provider agreement may also be revoked. In Indiana, there are two separate steps in the process of terminating a facility from the Medicaid program. In the first step, the ISDH determines that a facility's certification should be cancelled when the ISDH finds that the facility's care is deficient and thus not in compliance with Medicaid standards. 42 C.F.R. § 442.117 provides that the ISDH "must terminate a facility's certification if it determines that ... the facility no longer meets conditions of [Medicaid] participation." 42 C.F.R. § 442.117(a)(1). If the ISDH has determined that the facility does not meet those conditions, at step two the OMPP sends an official notice of decertification to the facility based on ISDH's negative determination, thus terminating the provider agreement and Medicaid funding. With limited exceptions not relevant here, the OMPP cannot provide Medicaid funding to a facility that is not certified to participate in the Medicaid program. 42 C.F.R. § 442.12. The relationship between the OMPP and the ISDH is set out in a state Interagency Agreement.

If the ISDH determines that a facility's certification should be cancelled, the facility may then appeal that determination with the ISDH. Additionally, when the OMPP terminates a facility's provider agreement (and with it Medicaid funding), the facility can likewise appeal that decision with the OMPP. Therefore, under this two-step procedure, if the ISDH finds that a facility's certification should be cancelled, and, consequently, the OMPP terminates the provider agreement along with Medicaid funding, the facility must pursue the ISDH appeals process to maintain certifi-

---

1. The court regrets that it is necessary to use acronyms when referring to various agencies and titles with long names. The following is a quick reference to those used in the order: FSSA (Indiana Family and Social Services Administration); ISDH (Indiana State Department of Health); OMPP (Office of Medicaid Planning and Policy); and ALJ (Administrative Law Judge).

cation, and pursue the OMPP appeals process to maintain funding.

Three times in 1998 and 1999 the ISDH sent letters to New Horizon attempting to cancel New Horizon's Medicaid certification. Legacy appealed the first notice (April 8, 1998), and on June 30, 1999, the ISDH appeals panel vacated the cancellation because the ISDH lacked the "authority to cancel Medicaid certification under the Interagency Agreement." Rather than commencing its own appeal, the ISDH amended the Interagency Agreement in an attempt to make it·clear that the OMPP would cancel a provider agreement if the ISDH makes findings denying certification.

After the Interagency Agreement was amended, on July 21, 1999 Legacy received a second letter from ISDH, again attempting to cancel Legacy's certification. As with the first letter, Legacy appealed the second cancellation letter to an administrative law judge ("ALJ") with the ISDH. On August 23, 1999, the ALJ dismissed the second cancellation letter, concluding that the amended Interagency Agreement still did not authorize the ISDH to determine certification.[2]

At this point, when all was said and done with this zig-zagged process, Legacy still had its certification and was thus eligible for Medicaid funding. This leads us to the issue now before this court which involves the third ISDH letter. This letter was sent on September 2, 1999 to the New Horizon facility after the ISDH surveyed the facility and determined that its quality of care was deficient. This third letter was titled "FINAL DETERMINATION CANCELLING CERTIFICATION" and stated that the facility's Medicaid certification "should be cancelled," and that the ISDH would recommend that the OMPP terminate New Horizon's provider agreement. This letter also notified New Horizon of its rights to the ISDH appeals process. But unlike its response to the other two letters, Legacy did not appeal what we will call "Letter 3."[3]

On the heels of Letter 3, on September 9, 1999, the OMPP sent a letter to New Horizon stating that based on Letter 3, the OMPP had terminated New Horizon's provider agreement, which meant no more Medicaid funds. The OMPP letter also notified New Horizon of the agency's appeals procedures. Although Legacy did not appeal the ISDH's findings of noncompliance in Letter 3, Legacy did appeal the OMPP decision, and asked an ALJ with the OMPP to transfer Legacy's appeal from the OMPP to the ISDH. On January 6, 2000, the ALJ for the OMPP denied Legacy's request because no state statute authorized such a transfer. The ALJ also concluded that the ISDH is the state agency with the authority to certify facilities for the Medicaid program, and that the ISDH decision (in Letter 3) to terminate a provider's certification becomes final if it is not properly appealed. The ALJ did not address the issue of whether New Horizon was entitled to a hearing with the OMPP

---

**2.** On February 1, 2000, an ISDH appeals panel reversed the ALJ's decision, concluding that the ISDH did have the responsibility to certify Medicaid providers under the amended Interagency Agreement. Legacy in return appealed that decision to a state court. On July 19, 2000, a state court vacated the appeals panel, concluding that the June 30, 1999 decision by the ISDH appeals panel on the first letter had *res judicata* effect in Legacy's appeal of the second cancellation, and

thus the ISDH did not have the authority to cancel New Horizon's certification in the second letter, regardless of the amended Interagency Agreement.

**3.** Legacy's counsel was asked at oral argument why Legacy did not appeal Letter 3. Counsel responded that he could not answer that question because he was not the attorney who made that decision.

on the ISDH's findings of noncompliance. Thus, the OMPP considered itself bound by Letter 3. Because the facility was no longer certified, it terminated New Horizon's Medicaid funding as of January 29, 2000. The ALJ at OMPP did not conduct a hearing on Legacy's appeal. Legacy thus sought further administrative review of the ALJ's decision.

On February 18, 2000, while its administrative appeal was pending, Legacy filed a twenty-count complaint in federal court against various state Medicaid officials. At the same time, Legacy filed a motion for a preliminary injunction on count 2 of its complaint, seeking the continuation of New Horizon's Medicaid funding until Legacy received a hearing with the OMPP on the ISDH's findings of noncompliance. In support of its motion, Legacy argued that "the defendants have wrongfully terminated the certification of Legacy's New Horizon facility and are depriving Legacy of a hearing on that termination," in violation of Legacy's due process rights.

The district court denied Legacy's motion for a preliminary injunction, concluding that Legacy failed to show a likelihood of success on the merits of its due process claim. Specifically, the court found that Legacy was well aware of the ISDH process that required an appeal of its findings of noncompliance to that agency. It had failed to avail itself of that process and failed to demonstrate how that process was inadequate. Legacy then sought an injunction with the district court pending its appeal to this court, which was also denied. Legacy then filed an interlocutory appeal to this court.

On August 21, 2000, (before this court heard oral argument on Legacy's appeal), an ALJ with the OMPP granted the OMPP's motion for summary judgment on whether the OMPP properly terminated New Horizon's provider agreement based on Letter 3. The ALJ concluded that the OMPP was "entitled to judgment as a matter of law" because Legacy failed to appeal Letter 3. Because of that failure, the OMPP could not maintain a provider agreement (with Medicaid funding) with a facility that was not certified, and thus "no genuine factual dispute exists as to the appropriateness of the provider agreement termination by OMPP." Legacy sought judicial review of that decision in Indiana state court.

On September 28, 2000, this court heard oral argument on Legacy's appeal of the district court's denial of the preliminary injunction. While Legacy's appeal was pending with this court, a state court issued a decision on January 23, 2001, reversing the OMPP's[4] decision granting summary judgment for the OMPP. According to the state court, 42 C.F.R. § 431.151(a)(2) required the OMPP to make a "full evidentiary hearing" available to New Horizon when the OMPP terminated the facility's provider agreement.[5] The court also stated that the "determination of ISDH concerning noncompliance with Medicaid certification requirements [Letter 3], which was not appealed, may of

---

4. The state court actually refers to the ALJ as being with the FSSA, and the FSSA as the party that moved for summary judgment. But the ALJ who granted the summary judgment motion refers primarily to the OMPP in her decision. The heading of the decision reads: Before the Indiana Family and Social Services Administration Office of Medicaid Policy and Planning. Thus, for the purposes of simplicity, we will refer only to the OMPP.

5. The regulation provides, in pertinent part, that a State must make an appeals procedure available to "an intermediate care facility for the mentally retarded (ICF/MR) that is dissatisfied with a State's finding of noncompliance that has resulted in the denial, termination, or nonrenewal of its provider agreement." 42 C.F.R. § 431.151(a)(2).

course be used in any final determination by OMPP; but OMPP must give the opportunity for a full evidentiary hearing so as to comply with the appropriate legal precedents." The state court thus granted Legacy's request for an immediate stay of the OMPP's termination of New Horizon's Medicaid funding until the facility was provided with a full evidentiary hearing with the OMPP on the termination of its provider agreement.

At that point we ordered the parties to file supplemental memoranda on whether the state court's decision rendered this appeal moot. Legacy replied that because the appellees have appealed the state court's decision, that decision "may not yet be sufficiently 'final' for purposes of appellate mootness analysis." And the appellees argued that this appeal is not moot because they have appealed the state court decision and thus Legacy has not received the relief that was awarded. We also note that while the state court granted Legacy's request for a hearing with the OMPP on the termination of its provider agreement, there is no indication in the opinion that the state court granted the same relief that Legacy seeks in federal court, namely, a hearing to challenge the ISDH's findings of New Horizon's noncompliance with Medicaid certification requirements. The parties may claim otherwise, but the state court only mentioned that the ISDH's determination "was not appealed [but] may of course be used in any final determination by OMPP." We thus proceed to address the merits of this appeal.

## II.

Legacy argues on appeal that the district court erred in denying Legacy's request for a preliminary injunction. "We review a district court's decision to grant or deny a preliminary injunction under the abuse of discretion standard." *Ty, Inc. v. Jones Group, Inc.*, 237 F.3d 891, 896 (7th Cir.2001). "A party seeking to obtain a

preliminary injunction must demonstrate: (1) its case has some likelihood of success on the merits; (2) that no adequate remedy at law exists; and (3) it will suffer irreparable harm if the injunction is not granted." *Id.* at 895. "If the court is satisfied that these factors have been established, the court must then balance the harms to both parties using a 'sliding scale' analysis: the greater the moving party's likelihood of prevailing on the merits, the less strongly it must show that the balance of harms weighs in its favor." *Ferrell v. United States Dep't of Housing and Urban Development*, 186 F.3d 805, 811 (7th Cir.1999). "The court must also consider the public interest by weighing the effect that either granting or denying the injunction will have on nonparties." *Id.* However, if the district court concludes that the movant has failed to show a likelihood of success on the merits, then the court may conclude its analysis and need not make findings on the other factors. *See Reebok International Ltd. v. J. Baker, Inc.*, 32 F.3d 1552, 1556 (Fed.Cir.1994).

The district court first considered whether Legacy has a property right in its Medicaid certification. After reviewing applicable federal and state law, the court found that it was unlikely that Legacy could succeed on the merits of establishing a property right in a facility's Medicaid certification. But because the district court was "convinced" that "Legacy obtained all the process that it was due," it proceeded to consider what process was due in this case. The court determined that according to federal regulations, Legacy is entitled to a hearing on the ISDH's findings of New Horizon's noncompliance with Medicaid certification requirements. And the court concluded that because the ISDH provided Legacy with an appeals procedure to challenge those findings, Legacy was provided all the process that it was due. Thus, the court denied the motion, concluding that because Legacy failed

to pursue the ISDH appeal process, and "made no effort to demonstrate that the State of Indiana's procedures are inadequate," Legacy had not shown a likelihood of success on the merits of its due process claim.

■ To evaluate the district court's decision, we begin by looking at the requirements of due process. "Procedural due process claims require a two-step analysis. The first step requires us to determine whether the plaintiff has been deprived of a protected interest; the second requires a determination of what process is due." *Doherty v. City of Chicago*, 75 F.3d 318, 322 (7th Cir.1996). Because we agree with the district court that Legacy received due process, we will bypass the property issue and proceed to the due process analysis.

"Due process, the Supreme Court has repeatedly written, is a flexible concept that varies with the particular situation." *Id.* at 323. The "fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Id.* If the State provides process, the plaintiff must either avail himself of that process or demonstrate that the available process is inadequate. *Id.* (citing *Daniels v. Williams*, 474 U.S. 327, 339–40, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986) (Stevens J., concurring)). Procedures are constitutionally inadequate if they contain "a defect so serious that we can characterize the procedures as fundamentally unfair, a defect so basic that we are forced to conclude that the deprivation occurred without due process." *Daniels*, 474 U.S. at 341.

On appeal, Legacy argues that the OMPP deprived Legacy of its provider agreement in violation of Legacy's right to procedural due process under the Fourteenth Amendment of the United States Constitution. In support of its contention, Legacy claims that because 42 C.F.R. § 431.151(a)(2) requires the State to make an appeals procedure available when a finding of noncompliance has resulted in the termination of a provider agreement. Legacy's right to appeal arose when the OMPP terminated New Horizon's provider agreement, and not when the ISDH purportedly cancelled certification.

Legacy's argument on appeal is different from its argument to the district court. In the district court, Legacy argued that "the defendants wrongfully terminated the certification of Legacy's New Horizon facility and are depriving Legacy of a hearing on that termination." Thus, Legacy claimed a right in New Horizon's Medicaid certification, not in its provider agreement.[6] Additionally, Legacy's motion below sought a hearing on the ISDH's "survey findings," and not on the OMPP's decision to terminate the provider agreement.[7] Legacy thus asserted that

---

**6.** Moreover, the title of Count 2 of Legacy's Complaint reads: "Illegally surveying the new Horizon facility, obtaining an improper decertification, and then denying Legacy a hearing on the decertification." And the district court's analysis of Legacy's property right claim concerned Legacy's assertion that "it has a property interest in its Medicaid certification and analogizes that to a license."

**7.** Legacy failed to clear up this question at oral argument when it was asked on what issue it was seeking a hearing: 1) on the ISDH decision that Legacy failed to meet the criteria for certification; or 2) on the OMPP decision terminating New Horizon as a provider because of the ISDH determination? Legacy's counsel answered that it sought an appeal on the latter issue. When Legacy was then asked that in light of its answer, why did it request the OMPP to transfer its appeal to the ISDH, Legacy's counsel answered that he could not answer that question because he did not make that decision. We find, however, that counsel's name is on Legacy's brief to the district court, which presents a 3–page argument that the OMPP should have transferred the appeal to the ISDH because the ISDH is the proper forum for an appeal of the ISDH's survey findings.

the OMPP should transfer Legacy's appeal from the OMPP to the ISDH. Therefore, Legacy's argument on appeal is properly construed to be that the New Horizon facility has been deprived of its property interest in Medicaid certification without due process because the OMPP has not conducted a hearing on the ISDH's survey findings, or transferred Legacy's appeal from the OMPP to the ISDH for a hearing on those findings.[8]

We must first consider what process was due to Legacy when state officials terminated New Horizon's Medicaid certification. According to 42 U.S.C. § 1396a(i)(2), when a State terminates a facility's Medicaid certification, the State shall provide the facility with "reasonable notice and opportunity for a hearing." Moreover, the district court concluded that pursuant to 42 C.F.R. § 431.151(a)(2), the State has a duty to make an appeals procedure available that includes a full evidentiary hearing. Therefore, Legacy was entitled to an appeal to challenge the ISDH's survey findings of noncompliance.

We next consider whether Indiana offered Legacy due process. Clearly, the ISDH's Letter 3 offered Legacy an opportunity to appeal the ISDH's survey findings. This letter set out in detail the precise procedure to follow and the time limits involved. But Legacy did not avail itself of the ISDH appeals process; thus in order for Legacy to prevail on its claim, it must demonstrate that the ISDH process is constitutionally inadequate. In other words, it must show that the procedure is "fundamentally unfair." *Daniels*, 474 U.S. at 341. But precisely because Legacy had urged the OMPP to transfer its appeal to the ISDH, and Legacy had successfully pursued the ISDH appeals procedure twice before, Legacy cannot now allege that the ISDH appeals process is inadequate.[9] Indiana offered Legacy all the process that it was due under the U.S. Constitution, and Legacy's decision to ignore that process is fatal to its case. *Doherty*, 75 F.3d at 323; *see also Herwins v. City of Revere*, 163 F.3d 15, 20 (1st Cir. 1998) (the idea that the plaintiffs could ignore a state procedural remedy and then create a federal procedural due process case "just makes no sense").

■ We also see no due process violation in the OMPP's denial of a hearing on the ISDH's survey findings. We have already established that federal Medicaid law requires the OMPP to designate a

8. On this point, Legacy moved to strike portions of the State's brief where the State claimed that Legacy never requested a hearing with the OMPP on the termination of the provider agreement. We deny Legacy's motion to strike because while Legacy may have requested a hearing with the OMPP on the termination of the provider agreement, it seeks to challenge the ISDH's findings of noncompliance at that OMPP hearing. As the state court summarized in its January 23, 2001 decision: "New Horizon has asked the FSSA [OMPP] either to certify the facility's appeal of the September 9, 1999 termination notice to the ISDH for an evidentiary hearing on the ISDH findings of noncompliance, or to conduct such an evidentiary hearing before an [ALJ with the OMPP]. The .[OMPP] has refused to do either."

9. We also notice that in Legacy's reply brief to the district court, it mentions that on November 7, 1999, it received a fourth letter from the ISDH ("Letter 4") recommending the termination of New Horizon's certification. This time, Legacy appealed Letter 4 to the ISDH, and an ALJ "found that the recommendation was unsupported by substantial evidence." Legacy further mentions that the OMPP also issued a termination notice (presumably based on Letter 4), and that Legacy appealed that as well. Precisely because Legacy has appealed three ISDH letters and prevailed demonstrates that it not only cannot show that the appeals process is inadequate, but also that it is very familiar with the process and had successfully complied with it both before and after its encounter with Letter 3.

survey agency, and that the ISDH is the agency that surveys facilities for certification. It likewise decertifies facilities that fail to meet the conditions of participation in the Medicaid program. Moreover, the OMPP cannot provide Medicaid funding to a facility that is not certified. Therefore, from a federal point of view, there is no constitutional violation of due process for Indiana to require Legacy to challenge the survey findings with an appeal to the ISDH, the agency that made the findings. Moreover, Legacy argued to the district court that pursuant to a State Medicaid Manual, "the forum for appeal of survey findings underlying termination is left to the state's discretion," and that pursuant to state and federal regulations, the ISDH is the appropriate forum for that appeal. Legacy's claim loses because it does not show that if it appealed Letter 3 to the ISDH, the ISDH would not have provided Legacy with an adequate hearing on the survey findings.

We also note that Indiana provided Legacy with due process to challenge the termination of New Horizon's provider agreement. There is nothing "fundamentally unfair" to requiring a facility to obtain a full hearing on the ISDH's findings of noncompliance with Medicaid certification standards with the ISDH, and then appeal the termination of its provider agreement with the OMPP. In effect, this is a bifurcated process. Findings of noncompliance are appealed through the ISDH. Termination of a provider agreement (causing denial of Medicaid funding) is appealed through the OMPP. Because certification is essential to Medicaid funding, failure to appeal the findings of noncompliance with Medicaid certification standards likely dooms funding from Medicaid. Thus, this two-step process is constitutionally adequate. Failure to follow the process, how-

ever, could prove to be a fatal decision. Legacy does not show that if it had appealed Letter 3 to the ISDH, the OMPP would not have held a full evidentiary hearing on the termination of New Horizon's provider agreement. There is no due process violation here.

### III.

Because Legacy failed to pursue the appeals process offered by the state Medicaid system, and does not show that the process was constitutionally inadequate, we conclude that the district court did not abuse its discretion in denying Legacy's preliminary injunction motion.

AFFIRMED.